## WAKEMAN and another *against* BANKS.

THIS was an action of ejectment. The ouster was laid on the 16th *August,* 1816. Plea, *No wrong nor disseisin.*

The cause was tried at *Fairfield, December* term 1817, before *Edmond, Smith* and *Gould,* Js.

On the trial, the plaintiffs gave in evidence a mortgage deed to them, executed by the defendant, on the 5th of *April* 1815, conditioned for the payment of two notes for 750 dollars 94 cents, each. It was agreed, that the defendant, at the time of executing the deed, was, and ever since had been, in possession. No other evidence was given. The plaintiffs claimed, that the court, on these facts, should direct the jury to find a verdict in their favour. The defendant claimed, that it was competent for the jury, on these facts, to give their verdict in his favour, on the ground that he was, of course, not guilty of a disseisin, but that a licence to remain in possession might be presumed. The court directed the jury to find a verdict for the plaintiffs; which they accordingly did. The defendant moved for a new trial, on the ground of a misdirection; and the motion was reserved for the advice of the nine Judges.

A mortgagee may bring an action of ejectment against the mortgagor in possession, without a previous demand, or notice to quit.

The execution of a mortgage deed, and the subsequent possession of the mortgagor, furnish no presumption of a *licence* from the mortgagee to the mortgagor, to remain in possession.

*Hartford,*
June, 1818.

Wakeman
*v.*
Banks.

*Sherman,* in support of the motion, contended, 1. That disseisin is always *a tort.* *Co. Litt.* 153. *a.*

2. That the possession of the mortgagor is *lawful.* This appears from several considerations. In the first place, he gains no title *by time,* his holding not being *adverse.* Secondly, he cannot be sued in trespass. Thirdly, he is not accountable for the profits. Fourthly, he is the beneficial owner of the land. 1 *Pow. Mort.* 221.

3. That a lawful possession always entitles the tenant to notice—*i. e.* a countermand of his right to remain there. 2 *Black. Comm.* 149. 150. A *technical notice to quit,* may not, indeed, be necessary ; *Keech* v. *Hall, Doug.* 21. *Thunder* v. *Belcher,* 3 *East,* 449. but some act *determining the will,* is necessary. In this case, there was none.

*N. Smith,* contra, relied upon *Rockwell & al.* v. *Bradley,* 2 *Conn. Rep.* 1. as having settled this point. He urged, also, the established and immemorial practice in this state, according to which the mortgagee may sue the mortgagor in ejectment, without a previous entry, or demand. He insisted further, that possession by the mortgagor, after giving the mortgage deed, did not conduce, in any degree, to prove a licence. The mortgagor's possession is the very act, which we complain of as a disseisin ; and is it to be inferred from the mere existence of that wrongful act, that we gave him a licence to do it ?

SWIFT, Ch. J. All the doubt and difficulty in this case, have arisen from not considering the true nature of the estate of the mortgagor, and comparing it to a tenancy at will, or at sufferance ; and thence inferring there must be notice to quit, before action can be brought, because in these cases such notice is necessary. But I apprehend, the estate of the mortgagor, where there is no express agreement to continue in possession, in no measure resembles a tenancy at will, or at sufferance.

A mortgagor is not entitled to emblements, is not accountable for rents, and is not liable to an action of waste. He can dispose of the whole, or any part, of the estate ; and it will descend to his heirs. He is considered, for all purposes, to be the *owner* of the land, excepting that the mortgagee may recover possession of it to enforce the payment of the

debt, for which it is pledged as a security. In an action of ejectment, the demise may be laid antecedent to the determination of the will, even to the time when the mortgage became forfeited ; but in the case of a tenant at will, the demise cannot be laid antecedent to the determination of the will. *1 Term Rep.* 383. So the tenant at will, or at sufferance, is entitled to emblements, is accountable for rent, liable to waste, and if he assigns, the very act terminates the estate, and the purchaser is a trespasser. So committing waste, or the death of either of the parties, puts an end to the estate. This clearly shews, that there is no resemblance between the estate of the mortgagor and a tenancy at will : and it may as well be said, that the mortgagor is entitled to emblements, because a tenant at will is, as it can be, that he is entitled to notice to quit, because a tenant at will is. The estate, then, of a mortgagor is peculiar to itself—to be governed by rules applicable to it, and bears no analogy to any other species of estate. There is no inconsistency, or impropriety, in saying, that one of these rules is, that the mortgagee may sue the mortgagor in ejectment, without notice to quit. Indeed, this is compatible with the nature of the estate : for it is but a security for a debt ; and it is a well known principle, that a suit may be brought against a debtor, without giving him notice. Such has been the immemorial practice in this state. Such is the common law, as settled by the decisions in *England.* The case of *Keech* v. *Hall, Doug.* 21. is in point.

That was an action of ejectment, by the mortgagee, against the lessee of the mortgagor, under a written lease for seven years, at rack rent ; the lessee having no notice of the mortgage, and the mortgagee no notice of the lease : and there was no notice to quit. Lord *Mansfield* considered the lessee to stand on the footing of the mortgagor, and says, the question turns on the agreement between the mortgagor and mortgagee ; that when the mortgagor is left in possession, the true inference to be drawn, is, an agreement that he shall possess the premises at will, in the strictest sense ; and therefore, no notice is ever given to quit. One would think, that this doctrine could hardly be laid down in more explicit terms : it is confirmed by the Court of King's Bench, in 3 *East* 449. and recognized by all the elementary writers on the subject.

*Hartford,*
June, 1818.

Wakeman
*v.*
Banks.

It is, however, contended, that these cases are not applicable, because the action was brought against the lessees of the mortgagor ; that the mortgagor, being tenant at will, could not transfer any estate ; that the act of leasing or assigning destroyed the estate, the lessee became a trespasser, and was not entitled to notice to quit. It is true, the assignment of the estate by a tenant at will, terminates it : but such is not the case of a mortgagor. It will not be denied, that a mortgagor may transfer his whole title ; and the purchaser, on taking possession, will stand in his shoes, and may redeem. Of course, he may transfer a part, or may lease for a less term than the whole estate ; and his grantee or lessee will have a complete right to redeem. The doctrine, then, is not correct, that there is no privity between the mortgagee and the lessee of the mortgagor ; and that the mortgagor cannot create an under-tenancy. The mortgagor has precisely the same power to transfer his equity of redemption, as any other estate ; and the purchaser succeeds to all his rights. The estate, like a tenancy at will, does not terminate by an assignment. Such clearly was the opinion of Lord *Mansfield,* in the case of *Keech* v. *Hall ;* for he places the lessee on the same ground as the mortgagor ; and the contrary doctrine is drawn from the mistaken idea, that a mortgagor is a tenant at will.

It has been supposed, that Lord *Mansfield* has laid down the proposition, that a mortgagor is tenant at will in the strictest sense, and not entitled to notice to quit : but as a tenant at will is entitled to such notice, the proposition is incorrect. Lord *Mansfield* does not say, that the mortgagor is tenant at will, in *any* sense ; he only says, that he possesses the premises, in the strictest sense, at will : not that he is tenant at will, in a technical sense ; but that he is so entirely at the will of the mortgagee, that he is liable to be sued in ejectment without notice to quit ; or, in other words, that his possession may be treated as lawful or tortious, at the will of the mortgagee. Viewed in this light, there is no inconsistency in the proposition.

It has been insisted on, that Lord *Mansfield,* when he said, the mortgagor possessed the premises, in the strictest sense, at will, meant only a tenant at will in the original sense, as contradistinguished from a tenant from year to year ; and by notice to quit, referred only to the six months notice required

to be given to the tenant from year to year, and therefore the case of *Keech* v. *Hall* does not support the doctrine that a mortgagor is not entitled to such notice to quit, as is required in the case of tenants at will, in the proper sense. If this could be made out, and if it also appeared, that the defendant in that case received such notice as must be given to tenants at will, in the original sense; then it would prove something; for it might then be said, that the defendant not being tenant from year to year, was not entitled to six months notice to quit; but being, in the strict sense of the word, tenant at will, and having received such notice to quit as the law requires in such cases, he was liable to be ejected by the plaintiff; for as judgment was rendered for the plaintiff, it must appear, that the defendant had some notice to quit, to give the case the effect and construction contended for. But this is all a fallacy, without a word in the case to warrant the supposition. In the first place, Lord *Mansfield* did not mean a tenant at will in the strictest sense, or in any technical sense; he merely speaks of the mortgagee in his proper character. In the second place, he did not refer to a six months notice to quit, but to notice generally, comprehending every act that will amount to notice to a tenant at will. In the third place, it appears that no notice to quit, of any kind, was ever given. It is not stated, that six months notice was not given, and that other sufficient notice was given; but that there was no notice to quit. Of course, it is immaterial whether the defendant was tenant at will, in the strictest sense, or tenant from year to year; or what was the kind of notice to which Lord *Mansfield* referred: for as no notice was given, the plaintiff could not have been entitled to recover on the principles assumed. But the court did render judgment in his favour, when there was no notice at all to quit. The consequence then follows, that the doctrine that a mortgagor is liable to be ejected without notice to quit, was settled by the case abovementioned.

It is said, the possession of the mortgagor will not bar the right of the mortgagee, or prevent him from selling; of course, it cannot be deemed adverse. But suppose the mortgagor should deny the title of the mortgagee, refuse to surrender possession, and do every act in his power to make it adverse; this would not give him a title by fifteen years

possession, or prevent the mortgagee from selling. Judge *Buller* says, (1 *Term Rep.* 383.) " The mortgagor cannot, against the will of the mortgagee, do any act to disseise him ; and the reason is, because the mortgagee, so long as he receives the interest, is, virtually, and in the eye of the law, in possession." Of course, whether the possession be adverse or not, it makes no difference with the rights of the mortgagee, and proves nothing.

It has been considered to be repugnant to the principles of natural justice, that the mortgagor should be sued without notice to quit. A mortgage is the security for a debt, or the performance of some collateral duty. When the debt is due, the mortgagee may, at the same time, pursue all his remedies ; he may sue for the debt ; he may petition to foreclose the equity of redemption ; and he may bring ejectment to recover possession of the demanded premises. It will be agreed, that he is not bound to give notice before he sues for the debt, or petitions to foreclose. Why, then, must he do it, before he brings his writ of ejectment ? There is as much reason in one case as in the other ; and precisely the same hardship in all.

On the whole, I am satisfied that the decision in the case of *Rockwell* v. *Bradley* was correct. I then thought this question was settled. If it was not then settled, I trust it now is ; and I hope this source of litigation is now exhausted.

TRUMBULL, EDMOND, BRAINARD and PETERS, Js. were of the same opinion.

SMITH, J. I think the court ought to have instructed the jury, in this case, that from the length of time the defendant was permitted to remain in possession, since executing the mortgage deed, when taken in connexion with the nature of the conveyance and general usage, they would be warranted to find *a licence to remain in possession for an indefinite period*. And in case they found such licence, as no countermand of it was claimed, their verdict must be for the defendant.

If this point of fact ought not to be left to the jury, it must be either because, first, the evidence is not adapted to to prove the fact ; or, secondly, the fact itself is immaterial.

*Hartford*,
June, 1818.

Wakeman
*v.*
Banks.

In the first place, then, I would enquire, whether this species of evidence is not well calculated to satisfy the mind, that such licence was actually given?

The delivery of a deed, whether mortgage, or a clear deed, is tantamount to livery of seisin, and will enable the grantee to bring forward his action immediately, against the grantor, who shall withhold possession from him. But when the possession is not resigned up, agreeably to the terms of the deed, and the grantor is suffered to remain in possession, while the grantee stands by, looking on, for a considerable period, making no objection, some degree of presumptive evidence will be afforded, that the grantee agreed to let the grantor remain in possession. This will be more or less convincing, as the period of permission may have been in point of duration, when taken in connexion with the kind of conveyance and general usage on these subjects.

In case of a clear deed, we could hardly account for the conduct of a grantee, who should suffer his grantor to remain in possession; and yet, should he do it, for a considerable period, it would afford some evidence that he had *agreed* to let him remain there. But in regard to a mortgage, it is far otherwise. In this case, we could hardly account for the conduct of a mortgagee, who should wish to take possession, provided the pledge is sufficient to secure the debt; and this is generally understood to be the case, before there is any accumulation of interest, which may afterwards increase the debt, till the security becomes insufficient. By permitting the mortgagor to remain in possession, all trouble of accounting for rents and profits is saved; and the mortgagor can manage his land to his own advantage, while it remains a pledge to the mortgagee, who usually wants nothing but his principal and interest. From the nature of the conveyance, therefore, the mind is prepared to give full effect to other evidence. And when we further take into consideration, what is matter of general notoriety, that almost universally such licence is given, and with these facts, find the mortgagor in the quiet and peaceable possession, for a considerable period after giving the deed, the mind cannot resist the conclusion, that an agreement was made, either tacit or express, for the mortgagor to continue in possession. I consider the evidence, therefore, as well calculated to prove the licence.

The next question, then, is, whether the licence, if proved, forms a defence to the action.

There has been much ingenious, and, to my mind, useless, speculation, among the learned, both in *England*, and this country, as to the nature of the estate which a mortgagor has, thus left in possession. At one time, he has been considered as tenant at sufferance ; at another, a tenant at will ; sometimes, an agent to the mortgagee to receive the rents and profits ; then, a tenant at will, in the strictest sense ; at another time, *like* a tenant at will ; and at another, he is said to be a tenant at will, to some purposes, and not to others. In the case of *Birch* v. *Wright*, 1 *Term Rep.* 378. 383. Mr. Justice *Buller* says, he is neither tenant at will nor receiver, and that it is not necessary for him to be either ; for his character as mortgagor is so well known, that to call him such is sufficient. And this, in my judgment, is, after all, the nearest correct ; though his character as mortgagor has its principal application, among other facts and circumstances, in establishing the fact of *licence*. When this is found, I think it would be still more correct to say of him, that he is in possession without any interest whatever in the land, by licence from the true owner, for an indefinite period, determinable only at the pleasure of the landlord. And in my opinion, there is one striking difference between a tenant at will and that of a mortgagor thus left in possession, which has not been noticed in any of the elaborate discussions on the subject. Every estate at will is at the will of both parties, landlord and tenant, so that either of them may determine his will, and quit his connexion with the other, at his pleasure. 2 *Black. Comm.* 145. This cannot be the case where a mortgagor is left in possession under the usual agreement between mortgagor and mortgagee. I consider it as making a part of the agreement usually understood in these cases, that the mortgagor shall continue in possession of the estate, taking all necessary care of it, paying interest to the mortgagee so long as the mortgagor shall chuse. And in case the mortgagor, after being thus left in possession, should abandon it, the mortgagee might, if he pleased, abandon it also ; and the law would still consider the possession as in the mortgagor, so that he would, nevertheless, be liable to pay interest on the debt, and could not compel the mortgagee to account for the rents and profits on the estate.

The question, then, arises, whether a man can be guilty of a disseisin while in possession of land under a licence from the owner for an indefinite period? Is proof necessary to support the negative of this proposition? Is it necessary to prove, that a disseisin is a *tort,* as much so as a trespass; and that there can be no tort, no trespass, by a person acting under a licence? As well might a man bring trover for a personal chattel, which he had loaned to another, and support the allegation of conversion, by mere proof of the loan, without a demand and refusal, as to bring an action of ejectment, and support the allegation of disseisin by proof of entering under an indefinite licence, unaccompanied with proof of a countermand of such licence.

I consider it, therefore, as perfectly clear, that while a man acts under a licence from the owner, he cannot be guilty of a disseisin; and it is equally clear, that where a man enters by licence from the owner for an indefinite period, such licence continues until countermanded, either by express declaration to the party, or some act of notoriety, such as *entering upon,* and *taking possession of,* the land.

I apprehend, that all the confusion and seeming contradiction, which we meet with in investigating this subject, has arisen from not distinguishing accurately between the well known practice, in so common use in *England,* of giving six months' *notice to quit* in case of tenancies *from year to year,* and that kind of notice which may terminate a tenancy at will, or at sufferance, or countermand a licence. And whatever may have been said about *notice to quit* not being necessary, in case of tenants at will, at sufferance, or in case of a mortgagor left in possession, I apprehend, that no *English* judge has ever intended to say, that an action of ejectment or trespass will lie against any tenant, of any description, until his estate is first determined, in some way known to the law.

I do not consider a tenant at *will,* at *sufferance,* or a mortgagor in possession by *licence* from the mortgagee, as being entitled to *notice to quit,* agreeably to the common import of that phrase. The lessor may determine the estate of the lessee at will, not only by an express declaration that he shall hold no longer, but by any notorious act of ownership. 2 *Black. Comm.* 146. Should a declaration be made, or notice given to the tenant, that he is no longer to consider

himself as tenant to the lessor; still it would not come within the well known doctrine of six months' notice to quit, applicable solely to tenancies from year to year; which, indeed, almost all tenancies at will are now construed to be. So a tenancy at sufferance may be determined, by a formal entry on the land, without the *notice to quit;* and so may a licence be countermanded, without such notice. All I should insist on, in any of those cases, is, that a man shall not be treated as a *tort-feasor*, who has done no wrong; or found guilty of a disseisin, while in possession as a tenant, or by licence.

I should have no doubt of the correctness of this view of the subject, was it not for an opinion I find expressed by our learned Chief Justice, in the case of *Rockwell* v. *Bradley*, 2 *Conn. Rep.* 5. I find it there advanced, that " There is no inconsistency in the agreement that the mortgagor may continue in possession, liable to a suit at the will of the mortgagee." And again, after citing the case of *Whiteacre* d. *Boult* v. *Simonds*, 10 *East* 13. as an authority in proof of the position, he adds : " So here, the mortgagee indulges or suffers the mortgagor to remain in possession, reserving the right to bring an action of disseisin against him at pleasure, without notice or demand." Though this precise view, is unsupported by any other judge, who has given an opinion at large in the case, and is somewhat different from any of the ingenious theories which we find in the books; yet I consider it as entitled to the highest respect; and being new, it may require a more particular examination than might be otherwise necessary.

The case of *Whiteacre* d. *Boult* v. *Simonds,* does not appear to me to support the position for which it was cited. That case turned upon the construction of two letters, which passed between the tenant and the landlord's agent. And it was said by Justice *Le Blanc*, that " if this were to be considered as a licence to the tenant to continue in possession, to be sure he could not be treated as a trespasser, until the licence was determined. But upon the construction of the letter, coupled with the situation in which the parties stood at the time, I think it is clear, that the landlord neither intended to grant him a licence, nor to consider him at all as a tenant." And all the other judges hold similar language. Lord *Ellenborough*, Ch. J., says, " I cannot construe the language of this correspondence, on the part of the landlord, as con-

Hartford,
June, 1818.

Wakeman
v.
Banks.

stituting a new tenancy between him and the defendant, after the time of the notice to quit, or a waiver of that notice; nor as a licence for the purpose now insisted on."

I have cited enough to show, that the case turning upon a point of construction, upon facts and circumstances bearing no analogy to the present, can have no bearing upon any of the important questions which arise in this case. If then, the case cited does not apply to the one now under consideration, I would examine the position advanced by our learned Chief Justice, upon *principle*. And here I must be allowed to say, that I feel great doubt whether there is not some small degree of inconsistency in the agreement, that the mortgagor may continue in possession, liable to a suit at the will of the mortgagee. It would seem to me, that the mortgagor, while continuing in possession by the agreement of the mortgagee, could not be guilty of a disseisin; and of course, not liable to an action: and if not guilty, and not liable to damages as a tort-feasor, an agreement to be liable to a suit as such, at the will of the mortgagee, would, to my mind, appear rather inconsistent. I apprehend, that no agreement made between two parties, that one shall have a right to sue the other at pleasure, will support an action, unless the defendant is in fact guilty as charged in the declaration; and whether guilty or not, will depend on proof in court, and not on any agreement made out of court. But I must confess, that I have never considered it as making a part of the agreement usually understood between mortgagor and mortgagee, that the former shall be liable to a suit at the will of the latter; and it would be strange that there should be such an understanding.

HOSMER, J. In *Rockwell* v. *Bradley*, 2 *Conn. Rep.* 1. it was determined, on the facts conceded, that the mortgagee might bring ejectment against the mortgagor in possession, without a previous demand, or notice to quit. From this case, it is, likewise, fairly to be inferred, that the court will not, on legal presumption, admit, that the mortgagor is in possession by licence of the mortgagee.

The court, at the circuit, in the case now before us, advanced a step further. It was contended by the defendant, that the jury might presume, from the fact of his undisputed possession, combined with the known usage of permitting

HARVARD LAW SCHOOL LIBRARY

the mortgagor to possess, until it became necessary to apply the pledge in extinguishment of the debt, that he held the premises by actual licence. The court withdrew this enquiry wholly from the jury, and directed a verdict for the plaintiffs.

The decision in *Rockwell* v. *Bradley,* lends no sanction to the charge in this case. Three of the judges, in that case, did not concur with the court. SMITH, J. gave an explicit opinion, " that the mere fact of the defendant's continuing in possession, when taken in connexion with the nature of the conveyance, would warrant a jury in finding a licence, unless other circumstances should appear, adapted to remove the presumption arising from that fact." Judge GODDARD remarked, " if the court had been called upon to instruct the jury, that from the nature of the plaintiff's title, from his having left the defendant in possession, and seen him occupy and take the rents and profits, and other circumstances, they were at liberty to presume an agreement between the parties, that the defendant should remain in possession until demand ; and the court had refused so to instruct the jury ; it would have presented a very different question for our consideration, upon which I give no opinion." The majority of the court, then, expressed no opinion on the question now before us ; and if an opinion was declared by any judge, it was inapposite to the case then before the court.

If the possession of the mortgagor may be for so short a period, as to lay no foundation for the presumption of a licence to occupy, on the other hand, it ought to be admitted, the occupancy may be so long, that no inference of actual permission to possess, may warrantably be made. This position is unquestionably true, in relation to the enjoyment of an estate, under the eye of the absolute grantee ; but, *a fortiori,* it is undeniable, in reference to mortgagors, who, according to the general understanding of grantees on condition, are permitted to retain the possession.

A tacit assent may be inferred from inaction, or forbearance of acting. *Pow. on Cont.* 131 to 135. Length of possession alone, constitutes a ground on which an absolute title by deed may be presumed. The foundation of this presumption of fact, rests on the act of occupancy, coupled with the apparent acquiescence of the former proprietor. On the same basis, the delivery of a deed has been presumed, and payment

has been inferred. I forbear to cite cases on a subject so obvious and familiar.

The principle that a tacit assent may be presumed from forbearance of acting, is deeply rooted in human nature. The mind is often as intuitively certain of a fact, from the silent act of omission, as from the positive existence of circumstances. On this head there is nothing technical, or artificial. The inferences of the fire-side and of the jury-bench, are the same. Believing and disbelieving are simple acts of the mind, which admit neither of definition nor description. Every person must judge of their nature from his own experience.

The court, at the circuit, must have gone the length of deciding, that from the possession of the mortgagor for a long period, and the silence and forbearance of the mortgagee, not a *scintilla* of proof resulted. If the circumstances in the case before us, had even a tendency to prove a licence, they ought to have been left to the consideration of the jury, to whom it alone belongs to determine upon their precise force and effect. *Gibson* v. *Hunter,* 2 *H. Black. Rep.* 297. This observation is emphatically correct here, where the court is prohibited from expressing any opinion on questions of fact submitted to the jury. 2 *Conn. Stat.* 106. In the case of *Jackson* v. *Longhead,* 2 *Johns. Rep.* 75. Judge LIVINGSTON, with whom the court concurred, expressed himself in the following manner : " It is sufficient for my purpose, that the mortgagor occupies with the mortgagee's consent, and that by a perfect understanding between them, he uses the premises as his own." This was the declaration of an inference warranted from the occupation of the mortgagor, and the apparent acquiescence of the mortgagee, and resulting from the nature of their relation, and the unquestioned possession of the former. Attending to the operations of my own mind, I am irresistibly impelled to the same result. The dictates of natural justice, in my opinion, give it their sanction, and prohibit the commencement of an action against the mortgagor, the licensed tenant of the mortgagee, before possession of the premises has been demanded. In my judgment, the court have erred, and a new trial ought to be granted.

GOULD, J. The doctrine, that a mortgagor, left in possession, is liable to an action of ejectment, before a demand of

*Hartford,*
*June, 1818.*

Wakeman
*v.*
Banks.

possession by the mortgagee, or any other act, or declaration, on his part, amounting to a determination of the tenancy at will, was heard of, in a court of justice, for the first time, in the case of *Rockwell* v. *Bradley.* Before the decision in that case, there was no judicial determination, no opinion, nor authority of any kind, to be found, in support of such a rule. And I still think, that it would be quite as difficult to discover any *principle,* in the law, to countenance the doctrine, as it was to find a precedent for that determination. For, though an opinion appears to have been entertained, by some of the profession, that ejectment would lie, in such a case ; yet that opinion is found to have originated, exclusively, in a sheer misconstruction of a single *gratis* remark of Lord *Mansfield,* in *Keech* v. *Hall.* The correctness of that *dictum* is not denied ; but the meaning of it, as has been demonstrated, is merely, that a mortgagor in possession is not entitled to the *six months'* notice to quit, required in tenancies *from year to year*—not that he is liable in ejectment, without *any* notice, or previous determination of the will. Neither Lord *Mansfield,* nor any other *English* judge, or jurist, ever advanced, or recognized, such a rule. Indeed, every legal principle or position in the books, which relates to the point, at all, either directly, or by necessary inference, disproves it.

In the opinion, which I gave in *Rockwell* v. *Bradley,* I acknowledged that the *dictum* in *Keech* v. *Hall* appeared to have been understood, in the case of *Thunder* v. *Belcher,* in a more general sense, than I then had, and now have, assigned to it. I was led into this admission, by a hurried and partial examination of the latter case, during the argument in *Rockwell* v. *Bradley.* But upon looking afterwards into the report of *Thunder* v. *Belcher,* I immediately perceived, that the court had, in that case, understood the observation of Lord *Mansfield* in *Keech* v. *Hall,* regarding " notice to quit," exactly as I have explained it : they having placed a mortgagor in possession, upon the same footing as a tenant at *sufferance,* whose possession the law confessedly presumes to be rightful, *till the contrary is shown.* Indeed, the precise distinction, upon which I relied in *Rockwell* v. *Bradley,* is recognized, in terms, by Lord *Ellenborough,* in *Thunder* v. *Belcher, viz.* That a mortgagor is not entitled to " notice to quit ;" and that his *lessee* is " not entitled to *any* notice." And I am

glad to avail myself of the present opportunity, to correct that concession.

It has been said, that by the usage of this state, a mortgagee may maintain ejectment against his mortgagor, without any previous demand of possession. I have no knowledge of any such usage, and have heard no proof of any : I cannot, therefore, persuade myself, that such a general usage has ever prevailed. Recoveries, under such circumstances, may have passed *sub silentio,* in particular instances ; but there is no pretence, that the point was ever made, except in *Rockwell* v. *Bradley.* But the only point, decided in that case, was, that a licence from the mortgagee, could not be presumed, or implied, as matter of *law,* from the mortgagor's possession : and this, to say the least, would seem to be carrying the rule quite far enough. But the question here is, whether—admitting, that no licence can be thus implied by law—the fact of a mortgagor's being left in possession, according to the general and known practice, in such cases, should not have been submitted to the jury, as *evidence* of a licence.

The whole question, then, is this : does the fact of a mortgagor's remaining in possession, when taken in connexion with the usual and admitted custom for mortgagors to remain, *conduce,* in the absence of all direct evidence either way, to prove a licence ? Or, (what is equivalent,) to render it *probable,* that his possession is in pursuance of an original understanding between the parties ? And I am clearly of opinion, that it does. Every transaction, from which any inference is claimed, is to be judged of, according to its essential character. And all agree, that a mortgage is not in the nature of a *sale and purchase,* but a mere *security :* And for this single reason, it differs altogether, as regards the present question, from an *absolute* conveyance, with which it has been so often compared, in the argument. The usual, and therefore, the *presumed,* object of a purchaser, under an absolute deed, is to obtain immediate possession, as well as title. But in the case of a mortgage of real property, this is seldom, or never, the end proposed. It is so, in no case, indeed, unless there is some understanding or calculation, reaching *beyond* the simple transaction of giving and taking a *mortgage.* A mortgage is, essentially, nothing more than a security, which, in the nature of the thing, may be, as it

generally is, as effectual, without possession, as with it. The purpose of the mortgagee is, not to obtain an estate, *to be occupied as his own,* or for his own use ; but simply to secure some existing, or perhaps, contingent demand. This object is not inconsistent with the mortgagor's continuing in possession ; and he, therefore, as the common practice is, retains it. And hence arises the *understanding* between the parties, so often mentioned in the law, that the mortgagor is to remain in possession. Combining, then, these several considerations, that a mortgage is not regarded by the law, or the parties, as an alienation—that the object, proposed in the transaction, does not require a transfer of the possession, and that according to the common practice, and the usual understanding of the parties, the possession remains in the mortgagor ; it is impossible for me to doubt, that the defendant's having been left in possession, according to this prevailing practice, would, at least, have conduced to prove, or have rendered it probable, that his possession was under a licence from the plaintiffs. And, as the court could not, at the trial, consistently with the case of *Rockwell* v. *Bradley,* decide the question of licence, as matter of law, in the defendant's favour ; I am entirely satisfied, that the point ought to have been left to the jury.

But when it is further considered, that, by the *English* law, and our own, the possession of a mortgagor is, without any express proof of a licence, and as a matter of course, presumed to be lawful in *every other* instance—that it is deemed lawful, (as being consistent with the mortgagee's rights,) so as to prevent the *statute of limitations* from running against him, and the statute against *selling disputed titles,* from invalidating an assignment of his interest—that it is deemed lawful, for the purpose of entitling a husband to *curtesy,* in the equity of redemption—that it is deemed lawful, for the purpose of enabling the mortgagor to make a *lease,* that will be valid against all subsequent incumbrances, and against all persons, except the prior mortgagee—that it is deemed lawful, for the purpose of entitling the mortgagor to all the *issues* and *profits,* and of conferring upon him a *settlement,* and the franchise of a *voter :* when it is considered, that the possession of a mortgagor is, as of course, presumed lawful, to all these intents ; the conclusion in favour of the defendant, upon the present question, becomes, in my judg-

ment, irresistible. For in all the instances, just mentioned, the mortgagor's possession is adjudged lawful, from no other circumstances, than what exist in the present case, *viz.* the nature of a mortgage, the relation of the parties, the usual and known custom of the mortgagor's retaining the possession, and the fact of his having peaceably retained it in the particular instance. And now, to hold, that all these considerations are not to be regarded, even as *evidence to a jury,* of his possession's being rightful, or to *rebut* the novel presumption of its being tortious, would introduce such an incongruity into the law, as is hardly to be found, I suspect, in any code, professedly founded upon a system of principles.

But it has been contended, that the question in this case, and that decided in *Rockwell* v. *Bradley,* are both resolvable into a point of *practice,* which might be settled, indifferently, either way. To me this is quite incomprehensible. If the question, whether a party is, upon a given state of facts, a trespasser—or, whether certain admitted facts conduce, in law, to prove another fact—depends upon a point of *practice ;* it must be difficult, indeed, to conceive, what may be deemed a matter of *principle.* They both, however, depend, in the most unqualified sense, upon those *principles* of the common law, from which I regard it, as a rule both of wisdom and duty, not to deviate. Whenever innovations upon that system have been introduced, they have been followed, almost universally, by consequences, greatly to be regretted. And if to the rule in *Rockwell* v. *Bradley,* we are now to superadd that, for which the plaintiffs contend ; the effect of the determination must be, that one, at least, of the undisputed rules, in the law of mortgages, will necessarily be abolished. If any one of those rules has hitherto been clear, beyond controversy ; it is, that the *profits* of the estate, while the mortgagor is left in possession, are, to all intents, *his* property ; and that he cannot, in any way, be made answerable for them, to the mortgagee. But if the mortgagee, as a matter of course, can recover possession, by ejectment, without any demand, or notice, and against all presumption of a licence, arising out of the transaction ; it must follow, that by a subsequent action, for the mesne profits, he may recover the *whole* of them, from the delivery of the mortgage deed, to the time of his recovering possession.

*Hartford,*
June, 1818.

Wakeman
*v.*
Banks.

For a right to recover mesne profits, from the time of the *ouster*, is necessarily incident to a recovery in ejectment ; and the record, in the ejectment, is *conclusive* evidence of that right. And, as the mortgagor in possession, without an express licence, must, upon the present suppostion, be regarded as a trespasser, from the time when the mortgagee's title *accrued ;* the liability of the former, for the profits, from *that* time, must follow, of course. Nor is this all. For the mortgagee, after obtaining possession, even without suit, may maintain trespass against the mortgagor, as for a tortious entry ; and by laying the trespass, with a *continuando,* from the delivery of the deed, to the time of his obtaining possession, may, in this way also, recover the *whole* intervening profits. These results are plainly inevitable, unless we are to avoid them, by abrogating fundamental principles in the law of trespass. What other consequences, less immediate, but perhaps equally to be deprecated, may ensue, I do not now enquire. Those I have mentioned are perfectly obvious : and I cannot consent to be instrumental in producing them. I have no doubt, that the direction to the jury was wrong.

CHAPMAN, J. gave no opinion, having been concerned as counsel in the cause.

New trial not to be granted.