An inhabitant of one town in this state, purchased land in another, and took an absolute deed thereof in fee, of the value of 190 dollars; which he immediately went into possession of, and resided on, about two years; having, at the time of taking such deed, given back a mortgage to secure 140 dollars, part of the purchase money. Held, that he acquired, by such absolute deed and residence, notwithstanding the mortgage, a settlement in the latter town.

The town of BARKHAMSTED *against* The town of FARMINGTON.

THIS was an action of *assumpsit*, for necessaries furnished by the plaintiffs, between the 1st day of *April*, and the 1st day of *August*, 1815, to *Erastus Peck*, a pauper, alleged to be an inhabitant of the town of *Farmington*.

The cause was tried at *Litchfield*, *August* term, 1818, before *Trumbull*, *Hosmer* and *Gould*, Js.

On the trial, the only question was, whether the settlement of the pauper, at the time when the plaintiffs supported him, was in *Farmington*, or in *Colebrook*. It was admitted, that from the 25th of *April*, 1798, to the 1st of *April*, 1801, he was legally settled in *Farmington*. On the 1st of *April*, 1801, *Eliakim Peck*, the pauper's father, during the minority of the pauper, and while he was living in his father's family, purchased of *Arah Phelps* of *Colebrook*, twenty-two acres, and three-fourths of an acre, of land, lying in that town; of the value of 190 dollars; which the vendor, by deed duly executed, conveyed in fee-simple to the purchaser; who went immediately into possession, erected on the land a small house, and dwelt therein with his family, the pauper being one, about two years. At the time of this conveyance, *Eliakim Peck* re-conveyed, by mortgage deed, the same land to *Phelps*, as collateral security for 139 dollars, 68 cents, part of the purchase money, the residue being paid. The last mentioned deed was recorded on the 14th of *November* 1803. It was admitted, that the pauper had gained no settlement subsequent to that in *Farmington*, unless he had, by virtue of the conveyance from *Phelps* to his father, and his residence as a member of his father's family in *Colebrook*, gained a settlement there. The plaintiffs claimed, that this conveyance conferred no settlement on the father, and of course, none on the pauper. But the court charged the jury, that the title to the land, vested in *Eliakim Peck*, by the conveyance from *Phelps*, in connexion with said residence, was sufficient, notwithstanding the mortgage given back, to constitute him, and his son, the pauper, legal inhabitants of *Colebrook*. The jury having found a verdict for the defendants, the plaintiffs moved for a new trial, on the ground of a misdirection; and the court reserved the motion.

*P. Miner*, in support of the motion, contended, 1. That under our statute,(*a*) a settlement cannot be gained, by virtue of an equity of redemption, of any amount in value. A mortgagor has no estate in fee ; the fee being in the mortgagee. He has not the right of possession ; but may be turned out, at any moment, without notice. *Rockwell & al.* v. *Bradley*, 2 *Conn. Rep.* 1. *Wakeman* v. *Banks*, 2 *Conn. Rep.* 445. The statute evidently contemplates a *legal* estate, not a mere *equitable* one. If it be said, that *Eliakim Peck* had a legal estate, as he took an absolute deed from *Phelps* ; the answer is, that the absolute deed, and mortgage deed, were executed at the same time, and constituted but one transaction. The case stands upon the footing of that transaction, taken integrally ; and not upon one part disconnected from the other. That a widow may have dower, in an equity of redemption, does not prove that it will confer a settlement ; for the statute regarding dower(*b*) does not require that the husband should have been possessed *in fee*, but simply, that he should have been possessed, in his own right. Besides, dower is peculiarly favoured ; and this consideration has, undoubtedly, had its influence, in persuading the courts of this, and a sister state, to depart from the established rule in *England*. *Fish* v. *Fish*, 1 *Conn. Rep.* 559. *Hitchcock & al.* v. *Harrington*, 6 *Johns. Rep.* 290. *Collins* v. *Torry*, 7 *Johns. Rep.* 278.

The statute being made for the public good, ought to be construed so as to attain the end. But if a conveyance and re-conveyance, executed at the same time, will confer a settlement, the end is obviously not attained ; the statute is evaded, *by a form* ; and the paupers of one town, without any substantial qualification, may be imposed on another.

2. That, at any rate, the equity of redemption must be of the value of 100 dollars. It is the amount of the mortgagor's

*New-Haven,*
November,
1818.

Barkhamsted
*v.*
Farmington.

(*a*) *Tit.* 91. *s.* 3. The words are—" That no inhabitant of any town in this state, shall gain a legal settlement in any other town in this state, unless he shall have been possessed, in his own right, in fee, of a real estate of the value of one hundred dollars, in the town to which he may have removed, during his continuance therein."

(*b*) *Tit.* 51. *c.* 1. *s.* 1. The words are—" That every married woman," in the cases specified, " shall, immediately upon and after the death of her husband, have right, title and interest, by way of dower, in and unto one third part of the real estate of her said deceased husband, in houses and lands, which he stood possessed of in his own right, at the time of his decease, to be to her during her natural life."

*New-Haven,*
November,
1818.

Barkhamsted
*v.*
Farmington.

interest, and not the value of the land included in the mortgage, which is to give the rule. In an estate mortgaged for less than its value, the mortgagor and mortgagee have distinct interests ; and each is susceptible of a precise valuation. The fee of the land, with the right of possession, is in the mortgagee ; which, being in equity subject to redemption, is worth to him what it is pledged for. The right of redemption is in the mortgagor ; and this right is worth to him, the difference between the value of the land, and the mortgage debt. Accordingly, in the present case, the mortgagee's interest was 139 dollars, 68 cents, and the mortgagor's, 50 dollars, 32 cents. On a different construction of the satute, an utter bankrupt, being mortgagor of property mortgaged for twice its value, might thereby gain a settlement.

*Bacon,* contra, remarked, that the legislature having expressly provided, that the being possessed in fee of real estate, of a certain value, is sufficient to gain a settlement, without prescribing any period of time for the continuance of such possession, courts of justice will give effect to the law as they find it, without regard to considerations of policy. He then contended, 1. That *Peck,* as mortgagor, was possessed of real estate in the town of *Colebrook.* During his residence in that town, there was no entry, or foreclosure, by the mortgagee : he was mortgagor in possession. Then, was he possessed *in fee,* and was his interest *real estate ?* Of this, there can be no doubt. A mortgagor's interest descends to *heirs,* as real estate ; it is subject to *execution,* as real estate ; it is subject to *dower,* as real estate ; it is, in *England,* a qualification to vote for members of parliament ; in short, the mortgagor, and no one else, is the real owner of the land. *Jackson* v. *Willard,* 4 *Johns. Rep.* 41. *Hitchcock* v. *Harrington,* 6 *Johns. Rep.* 290. 294. *Collins* v. *Torry,* 7 *Johns. Rep.* 278. *Fish* v. *Fish,* 1 *Conn. Rep.* 559. *Sedgwick* v. *Hollenback,* 7 *Johns. Rep.* 376. *Runyan* v. *Mersereau,* 11 *Johns. Rep.* 534. *The King* v. *St. Michael's, Dougl.* 630. 632. *The King* v. *Edington,* 1 *East,* 288. 293.

2. That as the fee must have vested in *Peck,* under the absolute deed from *Phelps,* before the mortgage was, or could be, given back, this alone was sufficient.

*New-Haven,*
November,
1818.

Barkhamsted
*v.*
Farmington.

3. That as the mortgage deed was not recorded until nearly three years after it was given, *Peck* had, during the whole of the time he was in possession of the estate, a clear record title ; a deed not recorded being void, except as against the grantor and his heirs. *French v. Gray,* 2 *Conn. Rep.* 92.

4. That the fee of the land being in the mortgagor, and that land being of the value of 190 dollars, the qualification was sufficient *in amount.*

SWIFT, Ch. J. By our statute respecting settlements, an inhabitant of the state may gain a settlement, by being possessed of an estate, in his own right in fee, of the value of one hundred dollars, during his residence therein. It is not required, that the purchase money be paid, or that the purchaser should hold it for any length of time. It is sufficient, if he is possessed in fee, during the shortest conceivable period of time.

It appears, that *Eliakim Peck,* the father of the pauper, purchased in *Colebrook* an estate in fee, by deed duly executed, of more than the value of one hundred dollars ; and that he mortgaged it, at the same time, to secure the purchase money. But the title of the land must have vested in *Peck,* before the mortgage could have taken place ; for they were distinct conveyances. Of course, there was a time when *Peck* was possessed in fee of the land ; and by operation of the statute, he gained a settlement thereby in *Colebrook.*

It is said, that by such construction of the statute, paupers may easily gain settlements in towns. If such purchase should be made with a fraudulent intent, to impose the burden of supporting a pauper on a town, such fraud would defeat it ; but if done *bona fide,* a court of law cannot controul the effect of such conveyance. If any inconvenience is to be apprehended from this source, it belongs to the legislature to provide the remedy.

GOULD, J. The only question is, whether *Eliakim Peck,* the father of the pauper, gained a settlement in *Colebrook,* under the conveyance made to him, by *Phelps.* For if the father thus acquired a new settlement, it was, of course, communicated to the son, who was a minor belonging to his father's family. I am of opinion that *Eliakim* did thus gain

a settlement in *Colebrook;* and that the direction to the jury was, therefore, right.

The grounds of the motion are two : First, that the interest, acquired by *Eliakim,* the father, under the deed from *Phelps,* was merely *equitable ;* and, secondly, that the *value* of this interest was not sufficient to confer a settlement. Both these questions depend upon the construction of our statute ; *(tit.* 91. *s.* 3.) under which, *Eliakim,* to have gained a settlement in *Colebrook,* must have been " *possessed,* in his own right, in fee, of a real estate of the value of 100 dollars," in that town. And I am fully satisfied, that he was there possessed of such an estate, within the meaning of the law.

It is not correct, in the first place, to say, that the estate of *Eliakim Peck* was a mere *equity,* at the time, to which the question relates. The equity of redemption, upon a mortgage, does not accrue, until there is a forfeiture, by a breach of the condition. But, at the time, when *Eliakim* must have acquired a settlement in *Colebrook,* if he acquired it, at all, the condition of the mortgage-deed was not broken. His right of redemption was, then, at *law.*

It might also, in strictness, be urged, that the conveyance from *Phelps* to *Eliakim,* vested the latter, at the time of the delivery of the deed, with the *absolute* fee, at law : for though the absolute deed from *Phelps,* and the mortgage-deed back, were, doubtless, given in pursuance of one entire original agreement ; still, it is not true, that the two deeds constituted but one conveyance, or were, in any proper sense, component parts of one instrument, or common assurance. The mortgage-deed, given back, by *Eliakim,* qualified the *interest* conveyed to him by the absolute deed ; but did not, and could not, qualify, or affect, the latter *deed itself.* For the legal effect, or construction, of the one could, in no degree, be varied, or influenced, by the other. And if the *legal* fee once vested in *Eliakim ;* it seems immaterial, under our statute, whether it continued in him, for any particular period, or not : since the statute does not require any given *continuance* of title, or possession.

But waiving these, and all other narrow, or technical, grounds, I choose to found my opinion upon the broader one, that the equity of redemption upon a mortgage in fee, is an

estate *in fee*, as effectual to confer a settlement, as a legal fee. It is now too late to question the general doctrine, that the mortgagor, in such a case, is the *owner of the land*, and to be regarded, as such, at law, to every purpose, except the right of possession, which is at the controul of the mortgagee. This rule is established, by such high and multiplied authority, that it is no longer open to debate. *Martin* v. *Moulin*, 2 *Burr.* 965. *Rex* v. *St. Michael's, Bath, Doug.* 630. *Rex* v. *Parish of Edington*, 1 *East*, 288. *Jackson* v. *Willard*, 4 *Johns. Rep.* 41. *Hitchcock* v. *Harrington*, 6 *Johns.* 290. *Sedgwick* v. *Hollenback*, 7 *Johns. Rep.* 376. According to this doctrine, *Eliakim* owned the fee of the land, and was seised of it, to every practical purpose, for about two years. The statute requires, that he should have been " possessed, in his own right, in fee, of a real estate," &c. Now, if there were no other case, to prove, that he was possessed of such an estate ; that of *Fish* v. *Fish*, determined in this Court, *June* term 1816, (1 *Conn. Rep.* 559.) would be decisive of the point. The question, in that case, arose upon a claim of dower. The statute of dower entitles the widow to a life-estate in " one third part of the *real estate* of her deceased husband, in houses and lands, which he *stood possessed of*, in his own right," &c. In the statute of settlement, the clause, upon which the present question arises, provides, that an inhabitant of one town in this state, must, to gain a settlement in another, be " possessed, in his own right, in fee, of a real estate," &c. in the latter town. Under the former of these statutes, it was resolved, in the case of *Fish* v. *Fish*, that a mortgagor in possession, under a forfeited mortgage in fee, was *possessed of the realty, in his own right*, and that his widow was, therefore, entitled to dower. Now, as these two statute-provisions are, in their terms, almost identical, and to every purpose, material to the argument, entirely so ; I regard the case of *Fish* v. *Fish*, as decisive, that an equitable interest may give a settlement.

It is objected, however, in the second place, that the statute requires a real estate " of the value of 100 dollars ;" and that the value of *Eliakim Peck's* interest, under the deed from *Phelps*, did not amount to this sum—in other words, that his interest was equal in value, only to the part, which he had *advanced*, of the purchase-money. But if the principles, I have just advanced, are correct, he was the owner of

New-Haven,
November,
1818.

Barkhamsted
v.
Farmington.

the *land*, which was worth 190 dollars : and the objection, that the land was pledged for the residue of the purchase-money, has only the same bearing upon the question, as to say, that that residue was *unpaid*. There are provisions, in the *English* settlement-laws, requiring, in addition to the purchase of an estate, a particular period of residence upon it, and the actual payment of a certain sum, as purchase-money : but the provision in our law, upon which the present question depends, prescribes no such requisites. Suppose, then, that *Eliakim Peck* had owed 190, or 10,000 dollars, for which this land might have been attached, or had been actually attached, within a month, a week, or a day, after his deed from *Phelps :* Or suppose, that, instead of giving back a mortgage, he had given his own personal security, for the whole purchase money, payable in ten days, or on demand ; and that, on failure of payment, the land had been attached, and afterwards set off on execution. In either of these cases, he would, confessedly, have gained a settlement. And what difference could it make, in principle, or practical effect, whether he had taken the one, or the other, of these courses. The town of *Colebrook* would have been as secure against the risk of his becoming chargeable, in the one case, as in the other, and no more so. Our law of settlements recognizes no such thing, as raising an account current, and striking a balance between the amount of what a man possesses, and what he owes. It is sufficient, in this case, that *Eliakim Peck* " possessed a *real estate*, of *the value of* 100 *dollars.*"

The suggestion, that according to these principles, the paupers of one town may, by sham conveyances, be shifted upon another, has, in my judgment, very little weight in it. That any one town would attempt such a fraud upon another, is not to be presumed, under any circumstances ; but especially, when it is considered, that no one town is more exempt, than any other, from the practice, or retaliation, of such frauds. In courts of justice, at any rate, the proper time to consider the question of fraud, will be, when that question is made. And if the law, as it now stands, is open to frauds of this kind ; it is the business of the legislature, and of the legislature only, to guard against them.

The other Judges were of the same opinion.

New trial not to be granted.