BETTS *against* DAVENPORT.

In an action for the the obstruction of water, by the erection of a dam, the defence was, an uninterrupted and adverse use of the water, in the manner complained of, for more than fifteen years. The plaintiff, to shew that such use had not been adverse, offered in evidence a written agreement, entered into within that period, between *C.*, the defendant's grantor, and *D.* the plaintiff's grantor, wherein *C.* stipulated to lower or take down the dam in question, so as not to injure *D.*, and in case of his neglect to do so, to pay *D.* 20 dollars *per* month.—*C.* was then in possession, but had previously mortgaged the premises, the law day not having elapsed. Held, that such writing, containing the declarations of the mortgagor in possession, that he did not hold adversely, was admissible, for the purpose for which it was offered.

This was an action on the case for an obstruction, by the erection of a mill-dam, and causing the water to flow back against the wheel of the plaintiff's mill.

The cause was tried at *Fairfield, December* term, 1819, before *Bristol*, J.

The dam complained of was erected by one *Thomas Carr*, under whom the defendant claimed, in the year 1801, or 1802. The defence was, that this dam had been kept up uninterruptedly, and adversely, for more than fifteen years before the commencement of the action. To shew, that the *user* of the defendant, and those under whom he claimed, had not been uninterrupted and adverse, the plaintiff offered in evidence a written agreement, executed by *Carr* to *Burwell Betts*, under whom the plaintiff claimed, of the following tenor : " Whereas I, *Thomas Carr*, have erected a mill-dam across *Norwalk* river, which has raised the waters so high, that they flow back on the mill of *Burwell Betts ;* and whereas the said *Betts* has brought his action to recover damages against me for erecting said dam so high ; and whereas I have this day made compensation to said *Betts* for the damages that he has already sustained, and for the costs of said suit : now, I the said *Carr* do engage with the said *Betts*, his heirs and assigns, that I will lower my said dam, or take down the same, so as not to injure the mill of the said *Betts*, by the first day of *August* next ; and in case I do not take down said dam, or lower the same, so as not to injure the mill of said *Betts*, I engage to pay to the said *Betts*, his heirs or assigns, the sum of twenty dollars *per* month, for each and every month I shall continue the same, to the injury of said *Betts*, his heirs or assigns. In witness

whereof I have hereunto set my hand, this second day of *March*, 1805.

[Signed.]                    *Thomas Carr.*"

At the time *Carr* executed this writing, he was in possession of the dam now claimed by the defendant, and continued in possession about three years afterwards.   It was admitted, that the defendant must reckon the possession of *Carr*, while he held under this agreement, to make out an uninterrupted occupancy of fifteen years.   To the admission of this writing the defendant objected, on the ground that, at the time it was executed, *Carr* had no legal title to the premises.   It appeared, that he had mortgaged the premises in 1804, the law-day being out in 1806.   The judge overruled the objection, and admitted the writing for the purpose for which it was offered.

The plaintiff having obtained a verdict, the defendant moved for a new trial, for the admission of improper evidence. This motion was reserved.

*N. Smith* and *Sherman*, in support of the motion, contended, That the agreement in question was improperly admitted, inasmuch as *Carr*, previous to its execution, had conveyed his title to the mortgagees.   He had no possession of the premises, but in their right; and could not make any contract, or do any act, whereby their possession could be, in any manner, qualified, or its legitimate effects prevented.   He had no power to bind them, by his agreement; and no authority to impair their rights, by his admissions.   *Bull. N. P.* 104. 108.

*Hatch* and *Bissell*, contra, contended, 1. That the evidence offered was properly received, as the admission of a mortgagor in possession.   The law day not having elapsed, he had a *legal estate* in the premises, and was at law, as well as in equity, *the owner.*

2. That if *Carr* were a mere stranger, yet if the defendant must rely upon his possession, this agreement is admissible to shew the *character* of that possession.   Whether a man hold *adversely* or not, at a given time, depends upon certain acts and declarations of his, at that time.   What could a tenant in possession do, or say, more effectually to determine the nature of his possession, that to enter into a solemn agreement with another, to hold *subject to his right!*

*Fairfield,*
*June,*
*1820.*

Betts
*v.*
Davenport.

HOSMER, Ch. J.    The defendant in this case claimed title under one *Thomas Carr*, who constructed the dam ; and evidence was offered by him, to show, that it had been maintained uninterruptedly and adversely, for more than fifteen years, before the commencement of the plaintiff's action.    The plaintiff, who claimed under *Burwell Betts*, to disprove the adverse possession, offered in evidence a written agreement by *Carr*, when in possession of the premises as mortgagor. This testimony was admitted ; and the legality of the admission, is the sole question to be decided.

The adverse occupancy by the defendant, and those under whom he claimed, of the mill-dam, for more than fifteen years, would be a presumptive bar, in analogy to the statute of limitations. 2 *Wms. Saund.* 175. n.    But if the continuity of the adverse possession was broken, so as to leave an uninterrupted possession of less than fifteen years, the claim of the defendant would be unsupported.    To the competency of the evidence offered by the plaintiff, there exists no well founded objection.    As the rights of *Carr*, and of those claiming under him, were supposed to result from an adverse occupancy, the declarations of the mortgagor, in actual possession, that he did not hold adversely to the plaintiff's title, are admissible evidence. *Co. Litt.* 374. *a. Smith* v. *Burtis,* 9 *Johns. Rep.* 182. *Jackson* v. *Vredenbergh,* 1 *Johns. Rep.* 159. *Barkhamsted* v. *Farmington,* 2 *Conn. Rep.* 600.    The *quo animo* is indispensible to give a character to the possession, and to evince whether it was adverse, or consistent with the plaintiff's title. Then, as to its effect : *Carr*, when possessing the premises, agreed with *Burwell Betts*, under whom the plaintiff claims, that he would lower the dam, or take it down, so as not to injure the plaintiff's mill, or that he would pay him certain stipulated damages.    As an agreement, it could not, against the defendant, be of any efficacy ; but as a declaration that *Carr* did not possess adversely, it is good testimony.    It is equivalent to the most explicit affirmation, that he did not occupy the dam under a claim of right, or in opposition to the plaintiff's title.

The other Judges were of the same opinion, except BRAINARD, J., who was absent.

New trial not to be granted.