The opinion of the court was delivered by
TilghmaN, J. C..
This is an ejectment brought by William Goldsborough, the plaintiff below, against the executors of the late Rev. Br. William Smith, deceased, for a house and lot in the town of Huntingdon. Both parties claimed under Boctor Smithy *53 and the principal question was, whether the lot in dispute, being distinguished by the number 11, in the town plot, was included in a deed from the Doctor, to his daughter Williamina Elizabeth Smith, deceased, dated the 15th day of May, in the year 1783. On the trial of the cause, the defendant’s counsel took five bills of exceptions to evidence, and five exceptions to the charge of the court: Iii Doctor Smith’s deed to his daughter, which was given in evidence by the plaintiff, who claimed under it, he grants to her among other things, “ four lots in the town of Huntingdon, in the “ county of Bedford, marked, on the recorded plan of the said “ town, with the name of the said Williamina, Elizabeth Smith.” The plaintiff served a notice on Richard Smith, one_ of the defendants, who resided in the town oí, Huntingdon, to prodüce the town plan referred to in his father’s deed, and proved, thát after diligent search among the records of Bedford county, no plan of the town of Huntingdon; was to be found of so early a date as the year 1783. Richard Smith produced a plan which was recorded in the year 1795, and several others not recorded; but. declared that he never saw such a plan as that which was mentioned in his father’s deed, to his sister Williamina; nor could he find any. record of it. The plaintiff then offered to prove, by parol evidence, repeated declará-tions of Doctor Smith, both before and after the building of the stone house, which he built On the lot in dispute sometime subsequent to the year 1790, “ that the lot for Which this ejectment was Si brought, being distinguished by the number 11, on the recorded il plans produced by the said Richard Smith, was one of the four lots *£ conveyed to his daughter, by the deed of May 1783, before mentioned.” To this evidence the counsel for the defendants, objected, but the court admitted it, and an exception was taken to their ¿pinions. . ■
The lots conveyed by Doctor Smith to his daughter* could not t>e ascertained by any thing which appeared on the face of the deed; It was necessary therefore to go out of the deed, and have recourse to the recorded plan, to which it referred — but no such plan was to be found. What then was to be done ? Dr. Smith appears to have been mistaken in referring to a recorded plan. He might have deposited one in the recorder’s office, for the purpose of beingrecord-ed, but there is no reason t'o suppose that it ever was recorded; because there was no proof that any of the records of Bedford county had been lost. But the deed is not to be defeated b'y.a mistaken reference of this kind. In order to give it efficacy, it must be presumed, that at its date, a plan was in existence, in which the name of W. E. Smith was marked on four lots, and inasmuch as Doctor Smith’s executors cóuld prodüce no such plan, it may fairly be concluded that if was lost. In that Case, the law admits parol evidence of its contents, and what evidence could be more proper, than the declarations of Doctor Smith who made the deed, and was proprietor of the ground on which the town of Huntingdon was laid *54 out. He did not say expressly, that the plan referred to in his deed, was in his'possession, but he said that the lot No. 11, was one of those which he had conveyed to his daughter. It was very proper that the jury should hear this evidence, from which they- might draw their own conclusions. But it was objected by the defendant’s counsel, that notice to produce the paper supposed to be lost, should have been served on all the executors of Dr. Smith, and not on Richard Smith only. In answer to this objection, it is to be observed,that Richard, who lived in Huntingdon, was, the only executor who attended.the trial, and he declared, on his examination, that he had made diligent search himself, and inquired of the other members of the family. There was no reason to think, therefore, that the defendants were taken by surprise, or that the other executors could have produced any other papers. Indeed; from the nature of Doctor Smith’s deed to his daughter, which depended for its efficacy on a paper in the Doctor’s possession, he stood pledged to produce that paper whenever called on by his daughter, or those claiming under her. And as this cause was tried oncebefore, and a new trial ordered by the court, it must have been known perfectly well, by all the executors, that the plaintiff’s case depended on the town plan referred to in their father’s deed, and if either of them had it, it was his duty to produce it. The court below were satisfied, that every thing incumbent on the plaintiff, preliminary to the introduction of parol evidence, had been complied with, and there is nothing on the record which induces me to be of a contrary opinion. The defendant’s counsel urged another reason against this parol evidence, viz. that it contradicted the written evidence producedby them; meaning a town plan produced by Richard Smith, in which the name of Thomas D. Smith, (a son of Dr. Smith) was marked on the lot No. II. If the plan produced by Richard Smith, had been the one referred to in the Doctor’s deed, there would have been .weight in the objection. But it was not. The plaintiff did not recognise the plan which, was produced, as anypart of his title, and so far as concerned the lot No. 11, he was at full liberty to contradict it, by parol evidence. .If he could satisfy the .jury, that in the plan referred to in Doctor Smith’s deed, the name of W. E. Smith was written-on the lot No. 11, his title would be established, in spite of any other name which might have been written on the same lot, in any other plan. ' I am therefore, of opinion, that the parol eyidence was' properly received. ‘
The 2d exception was to the opinion of the court in rejecting a book offered in evidence by the defendants, in the hand writing of Dr. Smith, and called his book of property. In this book, the Doctor made entries from time to time, touching the disposition of his property; it was produced by Richard Smith, who proved that he had received it from his brother Charles, and that it was in the same condition at the trial, in which he received it from his brother. The leaves, from page 55 to page 66, had been torn out, but were *55 all produced, except pages 60 and 61 — and on the torn leaves which were produced, was an indorsement in the hand writing of Dr. Smith, directing in what part of the book they were to be replaced.
However reputable the persons through whose hands this book had passed, the court was right in not permitting it to be read in evidence. Two pages were still wanting, and who could say, what those pages might contain: It would be (mjust to affect the plaintiff’s title by a mutilated book, which might have been in his favour if the whole had appeared — whether the book would have been evidence, if it had been entire, I am not prepared to say. But, as it was, it was properly rejected.
The 3d, 4th, and5th exceptions, depending on the same principle, may be considered together. The defendant offered in evidence the following papers- — 1. A letter from Thomas D. Smith, deceased, (a son of Dr. Smith) to his father, dated September, 1786-— on this letter was an indorsement in the hand writing of Dr. Smith, and Richard Smith proved, that he received it from his father, to assist in making out a list of the rents of the town of Huntingdon. Thomas D. Smith in this letter, spoke of the lot in dispute, as his property. — 2d. A paper in the hand writing of Dr. Smith, dated in the year 1802, in which the house and lot in question are spoken of as his own property, (his son Thomas D. Smith being then dead.) — 3d. A plan of the town of Huntingdon made by Rich--ard Smith, under the direction of Doctor Smith, in the year 1791. These throe papers were objected to by the plaintiff’s counsel, and rejected by the court. The objection to them was, that they were acts, or declarations, of Doctor Smith, subsequent to his conveyance to his daughter. It was a good objection; for no man shall he permitted to defeat his own grant by subsequent declarations. A man’s confessions are evidence against him, but he cannot make evidence for himself by counter declarations. On this principle, the declarations of Doctor Smith, that he had conveyed the lot to his daughter, were evidence against him, and against his executors who claim under him. When a confession is given in evidence, the whole of it is to be taken together. But a confession made atone time, cannot be rebutted by a declaration at another time, because, if that were permitted, a man might always destroy his confessions, by subsequent declarations to the contrary. The papers offered in evidence therefore, which tended to show a title in,Doctor Smith, could not be admitted, in order to rebut the parol declarations by which he had confessed the title to be in his daughter.
The charge of the court remains to be considered. The 1st exception is, to what was said on the subject of the act of limitations. The charge was, “that if there was 21 years adverse possession “against the plaintiff, he ought not to recover; but that if the’ evidence of Alexander Dean, David M’Murtrie, and Robert *56 Si Campbell was believed, the-presumption of adverse possession 1 ‘ was repelled; because tírese witnesses swore, that Dr. Smith, at ei various times, admitted that he had conveyed the lot in question “ to his daughter, and that the house he was about to build, or had “ built upon it, was intended for her child”. Now who can deny that this evidence destroyed all presumption of adverse possession. The matter is really too plain to admitof argument. The 2d exception is, to that part of the charge, in which it is said, “ that if the lot in question was granted by Dr. Smith, to his son Thomas D. Smith, ‘‘ in 1783, before the alleged grant to his daughter Williamina, il then the defendant could not recover; but that the name of Thom-ilas D. Smith, entered in the old plan which had been produced, <£ with the other papers and deeds, were far from being conclusive ilevidence of such grant to the said Thomas D. Smith.” The defendants’ counsel complains, that the court stated their opinion of the evidence too strongly. I cannot say that I think so. Indeed I do not see how the court could have said less. The evidence was certainly very far from being conclusive. But it was left to the jury to estimate it according to their own opinion. No conveyance to Thomas D. Smith was given in'evidence. But there were circumstances in favour of his title, which were contradicted by other circumstances in favour of the title of Williamina Smith. The evidence could not properly be said to be conclusive on either side. The two next exceptions are, to the answers given by the court, in their charge, to the 5th and 6th propositions of the defendant’s counsel, on which the opinion of the court was required. The objection is, that the propositions was not answered fully and fairly. It is a vague kind of objection. I will not say that it was not possible to give a more explicit answer. But I think it was sufficiently certain, and what the jury could not misapprehend. And it is not contended that there is any thing against law in it. . It is plainly enough, expressed, that the jury are not to presume, that those executors of Doctor Smith, on whom a notice to produce papers was not served, had in their possession, the town planto which the Doctor’s deed referred — and that the declarations of Dr. Smith, that he was building the stone house for his grandson, did not vest any title in that grandson to the lot in question. These were substantial answers to the defendant’s 5th and 6th propositions. ■ The last exception to the charge is, on the answer to the defendant’s 7th proposition. The proposition was, “thatthe plaintiff cannot recover, having never been in possession, and not having shown any grant to ((Dr. Smith,ov title out oí the commonwealth.” The court answered, u that the defendant’s objections were not valid, because both parties t( claimed under Doctor Smith, and his possession was not adverse u to this.” The answer wasright, According to the testimony of Dean and others, the possession of Dr. Smith was in accordance with his daughter’s title. And as to a grant to him from the commonwealth, no positive proof of it was necesaary, because both par *57 ties affirmed, that he was seised of the ground on which he laid out the town of Huntingdon, and both gave evidence of title in themselves derived from him. Upon the whole then, I am of opinion, that there is no error in this record, and therefore the judgment should be affirmed.
Judgment affirmed.