No. 47.—ABNER GLANTON, plaintiff in error, *vs.* DANIEL GRIGGS, defendant.

[1.] Depositions taken by a student at law, of an attorney in the cause, and in the office and presence of the attorney, are inadmissible.

[3.] A party who acquires title to a bill or note, by indorsement, delivery, or

Glanton *vs.* Griggs.

otherwise, before due, but with express notice of any defect or incumbrance, is so far identified with the previous owner, that his declarations or admissions while owner, may be received in evidence against such party.

[3.] A, the debtor of B, upon a negotiable note not due, is summoned by C, the creditor of B, to answer upon process of garnishment. B subsequently transfers the note to D, with express notice of the pendency of the garnishment : *Held,* that judgment against A, in favor of the attaching creditor, may be pleaded in bar of the suit of D, the assignee of the paper.

Assumpsit—Troup Superior Court, May Term, 1848—before Judge HILL.

This action was founded upon a promissory note, made and executed by the defendant to one Benjamin Keel, or bearer, for five hundred and fifty dollars, bearing date on the 29th day of September, 1839, and payable on or before the 25th day of December, 1840. Before the commencement of this action, Seaborn J. Thompson sued out of said Court an action of assumpsit and bail, against one Martin Whatley, on the 21st January, 1840, and at the same time sued out a garnishment to the April term, 1840, of the Superior Court of Troup county, and Dianna Griggs was served with a summons of garnishment in said case, on the day after the same was sued out. About the time of the suing out of the garnishment, plaintiff bought the note on defendant from said Martin Whatley, which was not then due. The defendant not answering the garnishment at the April term aforesaid, the attorneys of said Thompson obtained at said term a rule *nisi* calling upon her to answer. On the 26th day of September, 1840, she filed her answer, denying any indebtedness to said Whatley. At the October term thereafter, the attorneys for said Thompson filed their issue, alleging that at the time of the service of said summons, Martin Whatley held the note aforesaid, and was in possession of the same for some time thereafter. At the October term 1841, said issue was tried, and the jury found a verdict against said defendant for the amount of the principal and interest due upon said note. It does not appear from the record, that the defendant joined issue in said case of garnishment.

The plaintiff instituted his action aforesaid upon said notes, at the ———— term of said Court, 184-, and at the May term thereof, 1848, said cause came on finally to be heard upon the issue

made by the pleas of defendant, setting out the proceedings on the garnishment, former recovery, &c.

Before the cause was submitted to the jury, the plaintiff's counsel objected to the execution and reading in evidence of the interrogatories of Isaac Wright, on the ground that they were taken in the office of defendant's counsel, they being present, and a student of defendant's counsel acted as commissioner, and made out the answers of the witness. The interrogatories were admitted by the Court.

The plaintiff's counsel read the note (as established) in evidence, and closed his case. The defendant's counsel, after reading Isaac Wright's testimony, offered Wm. L. D. Cook as a witness to prove the sayings of Martin Whatley about the note, whilst in his possession, and a few days after garnishment was served; to which plaintiff objected, upon the ground that the defendant not having proved Whatley to be dead, he being a competent witness, his sayings ought not to be admitted in evidence. The Court admitted them, and the plaintiff excepted.

The defendant offered to prove by Joseph Heard, and by the interrogatories of Russell Smith, the acts and sayings of Whatley on the day that the garnishment was served, to which plaintiff objected, upon the ground that the declarations of a person not a party, who is living, and a competent witness in the cause, though against his interest at the time made, are inadmissible. The Court admitted them, and the plaintiff excepted.

After the evidence was closed by defendant, the plaintiff introduced George W. Dallas to prove some discrepancy between the oral statements of Wright to the witness, his conversations with plaintiff, and his testimony as made by his interrogatories taken by defendant, and also the interrogatories of said Wright, taken by the plaintiff. After the cause was argued by plaintiff and defendant's counsel to the jury, the Court charged the jury:

That whether defendant put in a right and proper answer to the summons of garnishment, or whether she was guilty in filing said answer on the trial of the issue made thereon, of any laches or negligence, as the Court before whom it was tried had given judgment against her, that the jury, in the trial of this case, had nothing to do with that matter, to which plaintiff's counsel excepted.

The Court charged the jury, that they had the right to judge

of the motives and feelings of witnesses, and if they believed that Dallas, acting as the friend of plaintiff, and taking an interest in his behalf, went to Wright's, to get from him contradictory statements, that but little or no weight ought to be given to his testimony, to which plaintiff excepted.

The Court also charged the jury, that if Glanton had notice of the pendency of the garnishment stated in defendant's pleas, at the time he traded for the note, although it was not due, he was not entitled to recover—to which plaintiff's counsel excepted, upon the ground that the maker of a negotiable paper is not subject to garnishment before the note becomes due.

DOUGHERTY, STOKES & PRIOR, for plaintiff in error, cited—

*Tillinghast, Stark & Co. vs. Walton*, 5 *Ga. Repts.* 335. 2 *U. S. Dig.* 280, 2. *Fitch vs. Chapman*, 10 *Conn.* 8. *Woodward vs. Paine*, 15 *Johns.* 493. *Mima Queen vs. Hepburn*, 7 *Cranch*, 290.

BULL, for defendant in error.

1. A new trial will not be granted because illegal testimony was admitted, if wholly irrespective of that testimony, there was evidence sufficient to justify the finding. 1 *Kelly*, 580. 5 *T. R.* 426. 4 *Wend.* 485. 12 *Wend.* 41.

2. If the Court admitted improper evidence of a fact, and in the subsequent progress of the trial, the opposite party prove the same fact, a verdict will not be set aside for the admission of such improper testimony. 7 *Wend.* 377. 2 *Wend.* 361. *Graham on N. T.* 287.

3. Declarations of holders of bills and notes, made before the transfer, are admissible. 2 *Ph. Ev.* 663. 1 *Car. and Payne*, 145. *Ib.* 232. *Bailey on Bills*, 503. 1 *Ryan and Moody*, 127. 2 *McCord R.* 241.

4. A mere expression of opinion by the Judge, as to the weight of testimony, where the whole matter is left to the jury, is not such a misdirection as will set aside a verdict. *Stell vs. Glass*, 1 *Kelly*, 475. 9 *Bac. Abr.* 591, 592, 594. *Jackson vs. Packard*, 6 *Wend.* 417.

5. To entitle a party to a new trial on account of the misdirection of the Judge, his observations must not only be *erroneous,*

but such as were material, and affected the merits of the case. 9 *Bac. Abr.* 593.   5 *Ohio R.* 509.

6. A new trial will not be granted when the point of law on which the motion was founded, was not made and overruled at the trial.   9 *Bac. Abr.* 585.   8 *Conn.* 236.   *Ib.* 472.   10 *Conn.* 499.

7. By going to trial on the plea, the plaintiff admits the plea to be valid, and after permitting testimony to be given in, and introducing testimony himself under the pleadings, he is not entitled to have the judgment reversed, because the Judge submitted to the jury the very issue made up by the counsel on both sides, and agreed by them to be submitted to the jury.   *Meyer vs. McLean,* 1 *John. R.* 509.   *S. C.* 2 *John. R.* 182.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The record in this case presents three questions of interest to the profession, as well as to the parties.

1st. Is the deposition of a witness, taken by a student at law as commissioner, in the office of the attorney in the cause, who is present at the time, admissible?

2d. How far are the admissions or declarations of the assignor of a chose in action, made while he is holder, evidence against his assignee, and all claiming under him?

3d. A, the debtor of B, upon a negotiable note, not yet due, is summoned by C, the creditor of B, to answer upon the process of garnishment.   B subsequently transfers the note to D, with notice of the pendency of the garnishment; will the attachment lien of C, the creditor, be protected against D, the holder of the paper?

[1.] As to the competency of the testimony of Wright.   At Common Law, no testimony of witnesses is admissible, unless they are present and testify *viva voce,* and may be cross-examined by the adverse party.   As this rule, adhered to without exceptions, would sometimes produce injustice, by excluding testimony material to the issue, because the witnesses living without the jurisdiction of the Court would not voluntarily, and could not be compelled to appear, and aged and infirm, and transient persons would be unable to do so—depositions are admitted in cer-

Glanton *vs.* Griggs.

tain cases by our Statutes, when taken pursuant to a commission issuing from the Court, where the cause is pending.

How well do Courts and counsel know that taking of testimony by deposition, is at best but a very imperfect way of arriving at the truth. It has been successfully resorted to, ten thousand times, to defeat it. Every precaution should, therefore, be taken to guard against abuses. Even as early as *Peacock's case,* (9 *Jac. ( Coke's R.* 271), it was holden, "that commissioners to examine ought to be indifferent and by all means to express the truth." In that case, Peacock the witness, being examined, would have declared all the truth, but J. H. a commissioner for the plaintiff, held him strictly to the interrogatories, so as the truth could not appear, and this was holden by the Lord Chancellor and the two Chief Justices, the Chief Baron and all the Court of Star Chamber, a great misdemeanor, *per quod justitia et veritas suffocantur.* It appears also, from the report, that the commissioner during the examination, held consultation with the plaintiff, who was in another room, and it was holden by all the Court, that a commissioner, before publication of the depositions, ought not to discover to any of the parties the matter thereof, nor after he has commenced taking the testimony, should he farther confer with the parties, in order to get new instructions, and if he did, such conduct was a great misdemeanor and punishable by fine and imprisonment; "for," say the Court, "if such thing should be suffered, perjury would abound." J. H. was put forth of the commission of the peace, and the Attorney General was required to prefer an information against him.

In the case of *Robert Walton, usee, &c. vs. Tillinghast, Stark & Co.* decided at the recent term of this Court, at Americus, and not yet reported, it was held, that the clerk of the attorney in the cause could not act as a commissioner. I find that opinion very fully sustained by the Lord Chancellor in *Shaw vs. Lindsey,* 15 *Ves.* 380. And I refer to it to show how vigilant Courts of Justice have ever been to guard the integrity of this species of testimony.

A motion was made by the defendant before publication in this cause, that depositions taken by commissioners, executed in Scotland, should be suppressed, as having been brought before the commissioners ready prepared; the witness being also agent to the plaintiff in the cause. *Sir Arthur Pigott* and *Mr. Bell,* in sup-

port of the motion, observed, that if this can be done, there can be no check upon the examination of witnesses in this Court. *Sir Samuel Romily, Mr. Hart,* and *Mr. Coke,* for the plaintiff, opposed the motion, distinguishing this as merely the effect of the inadvertence of the commissioners, not as the instance of depositions upon leading interrogatories, the fault of the party. The Lord Chancellor referred to a case *in which depositions were suppressed, on the ground that the commissioners employed the clerk of one of the parties, as their clerk.* How much stronger the objection, had the *clerk* of the party acted as commissioner.

In this case, said Lord Eldon, " there is every reason to believe that these commissioners taking the examination of this witness, thought they were acting rightly, and though I have no reason to think the effect will be to produce any different testimony from the witness, yet I am bound to suppress the deposition. *All Courts of Justice are extremely anxious to secure the pure examination of witnesses, by not permitting that mode of examination which would lead to infinite mischief.*"

It is worthy of notice, that the Chancellor declared that it was not only competent for the commissioner himself, to testify to any irregularity attending the examination, but that the Court would act, even where the fact is brought to its knowledge, through an eaves-dropper.

Questions analagous to the one under consideration, have been repeatedly before the Courts of this country, and the uniform practice has been to reject depositions whenever the commissioners did not stand wholly indifferent between the parties, or if they were in any other way subject to just suspicion.

In *Smith vs. Huntington,* 1 *Root,* 226, upon objection made, a deposition, drawn up by one Ambrose Spencer, agent for the plaintiff, was ruled out by the Court. And in *Griswold vs. Griswold, Ib.* 299, a deposition was offered, which was first drawn up by the plaintiff, copied by another person, and sworn to with some additions made by the Justice. It was ruled out, except that part added by the Justice. The deponent, after attempting to give her deposition, became faint and exhausted, in consequence of which, the taking was postponed until the next evening, and in the meanwhile, the party procuring it to be taken, requested C, who resided in the same house with the deponent, to write her

Glanton *vs.* Griggs.

deposition from time to time, as she was able to give it, which C. accordingly did, in the absence of the adverse party, and his counsel and of the magistrate; it was held that C, in this transaction, was the agent of the party requesting it, and that the deposition so taken, was inadmissible.    *Allen vs. Rand*, 5 *Conn*. 322.

In a case of alimony, *Smith vs. Smith*, 2 *Green*. 408, a deposition was offered by the libellant, which had been given before ——Ayer, Esq.    It was proved by the respondent, that this magistrate had on a prior occasion, during the pendency of this cause, acted as the attorney of the libellant, at the taking of other depositions, before another magistrate, and that he had also been a witness for the libellant at the trial.    The Supreme Court of Maine rejected the deposition, observing, that it was evident from these facts, that he was not free from bias in the cause, and therefore, not a suitable person to take the testimony of witnesses.

The deposition in *Addleman vs. Masterson*, 1 *Penn. R.* 454, was taken under the following circumstances, as appears from the examination of Mr. Orbison, who executed it : " I wrote it at the place designated; I have not a distinct recollection whether Justice Still was in the room all the time or not; I remember he was in some of the time ; no one appeared on the part of the plaintiffs ; one of the Addlemans was there ; I was requested by Messrs. Potter and Blanchard to attend to it ; I was concerned in a former suit with Mr. Riddle as counsel for the defendant; Mr. Addleman spoke to me, and said he would pay me if I would go and assist him to take this deposition ; I did so ; he never paid me anything, and I do not consider myself as engaged in this cause, as counsel.    I did appear as counsel in the cause, and my name is marked."

The Court suppressed the deposition, to which opinion the counsel for the defendant took a bill of exception.

By the Supreme Court—" the rejection of the deposition of John Cannon was proper.    It is immaterial whether Orbison was concerned in the conduct of the suit or not, as it appears he was specially employed to take the deposition of the witness.    There is as much danger from testimony taken under such circumstances, as when the attorney is retained generally, for the trial of the cause.    Nor could it have altered the case if Orbison had been specially authorised to write the deposition.    It is not competent

· for the Justice to make the attorney of one of the parties his clerk, to take a deposition, unless with the express consent of the other party, or in the presence of his attorney, and acquiesced in by him."

So in *Patterson vs. Patterson's administrator,* 2 *Penn. R.* 200. That part of the deposition which was in the hand writing of the agent, or attorney of the party, was not allowed to be read, although an agent of the other party was present, and cross-examined the witness, after having objected to his competency, on the ground of interest. And the Court say, that it makes no difference whether he was retained generally, in the cause, or was employed merely for that particular service.

In *Summers vs. M'Kim* and another, 12 *Serg. and Rawl.* 405, in the same State, it was held that a deposition, drawn up privately by one of the counsel in the cause, from the mouth of the witness, and afterwards sworn to before a Justice, under a rule to take depositions is not admissible in evidence. It was further held, that the deposition ought to be reduced to writing, *from the mouth of the witness, in the presence of the Justice.*

Chief J. Tilghman, in delivering the opinion of the Court, says, "one of the exceptions taken to the evidence, involves a principle of great importance in practice, and I am glad that an opportunity is offered the Court of settling it. And although the character of the counsel in the present instance, (as did the character of the counsel in the late case referred to, as well as in the one now under discussion,) "puts him above all suspicion of unfair dealing, yet it would be a practice of most dangerous tendency, if depositions so taken were to be admitted as evidence. The counsel of the party producing the witness, is the last person who should be permitted to draw the deposition, because he will naturally be disposed to favor his client, and it is very easy for an artful man to make use of such expressions as may give a turn to the testimony, very different from what the witness intended. The rule of Court is, that the deposition should be taken before a Justice. It ought, therefore, to be reduced to writing, from the mouth of the witness, in the presence of the Justice, though it need not be drawn by him. And in case of difference of opinion in taking down the words of a witness, the Justice should decide."

How often in this State, has this statutory rule been disre-

garded, and the witnesses been permitted to produce their answers already written out, to be qualified to merely by the commissioners! This is wrong in principle, and mischievous in practice. 1 *Harr. Ch.* 360. *Ambler*, 252. *Mss. opinion cited by Lord Eldon, in Shaw vs. Lindsey*, 15 *Vesey*, 383. 5 *Mass. Rep.* 219.

In *Bean vs. Quimby*, 5 *New Hamp. R.* 98, the question was, whether a deposition taken before the uncle of the plaintiff, ought to have been permitted to go to the jury. On that question, the Court said they had no doubt. The invariable rule by which this Court is governed in the admission of depositions is, not to receive any which have not been taken fairly and with the utmost good faith, before a veritable magistrate, and at a proper time.

The inference from the authorities would seem to be, that not only relationship by consanguinity or affinity, and that of attorney and client, would disqualify a commissioner, but that the rule is much broader, and that commissioners, like jurors, should be free from all impressions and influences. For the time being, they discharge Judicial functions. They should not be under the power, nor owe suit or service to either party.

We esteem it a great defect in our law, providing for the taking of testimony by commission, that it does not require notice to be given to the opposite party of the time and place of its execution.

We hold, then, that His Honor, the Judge, erred in not rejecting the testimony of Wright, taken by the defendant. But shall we, on that account, send the cause back? We think not. It has been often decided that although the Court errs in refusing to nonsuit the plaintiff, still, if the evidence which ought to have been given by the plaintiff, is given in the course of the trial, a new trial will not be granted because of such error. *Graham on New Trials*, 287. That principle is applicable here. Both parties examined Wright upon interrogatories. The witness proves the same facts, substantially, in both sets. Repudiate, then, altogether, his testimony as taken by Mrs. Griggs, and still it is in proof, from his examination, taken and read on the trial, at the instance of the plaintiff, that Glanton had explicit notice of the pendency of the garnishment before and at the time he traded for defendant's note.

[2.] How far shall Glanton, the plaintiff, be affected by the admissions and declarations of Martin Whatley, as testified to by Smith and others, made while he was the holder of the note. As

a general rule, the acknowledgements of an immediate party to a suit are admissible as evidence against him. For the same reason, it is competent to give in evidence the statements of the owner of property, emanating from him while in possession. And the elementary writers lay it down, that the same property, afterwards coming to another by descent, devise, right of representation, sale, or assignment, in a word, by any kind of transfer, whether it be the act of the law, or the act of the parties, whether the subject of the transfer be real or personal estate, corporeal or incorporeal, choses in possession or choses in action, the successor is said to claim under the former owner, and whatever he may have said affecting his own rights before parting with his interest, is evidence equally admissible against his successor, claiming from him either immediately or remotely. And that in this instance it makes no difference, whether the declarant be alive or dead, for, though he be a competent witness, and present in Court, still his admissions are receivable. This doctrine it is suggested, proceeds upon the idea that the present claimant stands in the place of the person from whom his title is derived: has taken it *cum onere ;* and as the predecessor might have taken a qualified right, or sold, changed, restricted, or modified an absolute right, and as he might furnish all the evidence necessary to show its state in his own hands, the law will not allow third persons to be deprived of that evidence, by any act of transferring the right to another. Declarations made by the predecessor are a part of the *res gestæ*, whether accompanied with acts of possession or forbearance ; so much so, indeed, that they might be, for many purposes, evidence in his own favor to fortify his claims, but above all, to weaken or contract it. *Cowen & Hill's notes on Phil. on Ev. Notes*, 452, 481.

The foregoing doctrine applies to real estate, not only as between ancestor and heir, devisor and devisee, but also between grantor, bargainer, and vendor, and grantee, bargainee, and vendee. 14 *Mass. R.* 245. 7 *Con. R.* 319. 2 *T. R.* 55. 3 *N. H. Rep.* 487. 1 *Watts R.* 154. 11 *Wend.* 536. 4 *Johns. R.* 230. 4 *Serg. & Rawle,* 174. 3 *Conn.* 286. 2 *Penn. R.* 706. 2 *Haywood R.* 287. 5 *Cowen's R.* 123. 1 *Bailey's R.* 62. 3 *Johns. R.* 499. 2 *Dall.* 93. 3 *Harris & Johns. Rep.* 410, 426. 3 *Rawle,* 437. 5 *Serg. & Rawle,* 295. 1 *Bailey,* 101. 9 *Serg. & Rawle,* 47, 53, 4, 5. 4 *Peters,* 1. 6 *Ib.* 598. 5 *Yerg.* 217.

The same rule extends to personal property, whether in possession or in action, and whether transferred by operation of the law or the act of the parties. 1 *John. R.* 340.   5 *Pick. R.* 410. 11 *John. R.* 185.   3 *Rawle,* 438, 451.   5 *Green.* 105.   3 *Lou. R.* 707.   2 *Call,* 275.   *Kirby,* 60.   7 *Harr. and John.* 147.   7 *Monroe,* 97.   3 *Murph.* 150.   2 *Camp.* 92.   1 *Bing.* 45.   1 *Harp. R.* 374.   2 *Verm.* 309.

So as to choses in action, the principle is universal, that the declarations or admissions of the assignor, made while he is the holder, are evidence against the assignee and all claiming under him, if made before assignment.  And the only qualification, as remarked by the able and indefatigable editors of the work already quoted, lies in bills of exchange, and promissory notes. With regard to negotiable papers, the true distinction is, "that if a party acquires a bill or note by delivery, or indorsement, or otherwise, after it is due, or dishonored, or with notice, or without consideration, or in any other manner which deprives him of the character of a *bona fide* holder, he is so far identified with the previous owner, that his declarations while owner, may be received against such party.  But if the latter is a *bona fide* holder in the due course of trade, he cannot be touched by such dedeclarations.  *N.* 481, *p.* 668, *C. and H's. Phillips.*   6 *Dow. and Ryl.* 379.   4 *Barn. and Cress.* 325.   1 *Barn. and Adolp.* 89.   1 *Starkie's Rep.* 59.   2 *Ib.* 42.   2 *McCord,* 214.   3 *J. J. Marsh.* 622.   2 *McCord,* 457.   1 *Yerg.* 203.

Having thus stated, as compendiously as possible from this treatise on evidence, the elementary rules respecting this interesting branch of the law, and subjoined the leading cases in support of them, let us apply them briefly to the point before us.

Isaac Wright, in the interrogatories read by the plaintiff, was asked, whether he was present when Glanton purchased the note of Dianna Griggs, from Martin Whatley.  If he did not know that Mrs. Griggs was garnisheed, and if he did not inform plaintiff of that fact before he purchased the paper, and to state Glanton's reply ?   To which he answered that he was present when the transfer was made, that he notified Glanton of the pendency of the garnishment against the maker, Mrs. Griggs, at the instance of Seaborn J. Thompson, and that Glanton replied that "he did not care, garnishment or no garnishment, he would buy the note."

It being thus made to appear that Glanton had express notice of the attachment lien, he cannot disconnect himself from the previous title of Whatley; on the contrary, he stands in privity with him, and is bound by his declarations as well as his acts, made before he parted with the paper. But for this proof, having traded for the note before due, he would have been independent of the former holder, who transferred to him the note; neither could the declarations of Whatley have been used in derogation of his rights. As it is, he took the note, *cum onere*, nor is his claim paramount to that of the attaching creditor.

[3.] It remains to notice shortly, the other question presented in the record, namely : who has the prior and better right to this debt owing by Mrs. Griggs ? Thompson, the attaching creditor, or Glanton, the holder ? Our opinion has been already pretty strongly intimated. If Glanton, under the circumstances, stands in the place of Whatley, and of the truth of this proposition, there would seem to be no doubt—the conclusion is inevitable. He took and holds the note in subordination to the lien, previously acquired by the levy of Thompson's attachment. This was the decision of the high Court of Errors and Appeals of the State of Mississippi, in *Peck vs. Webber*, 7 *Howard's R.* 658.

The same doctrine was maintained in *Rockwood vs. Varnum*, 17 *Pick. Rep.* 289, in a proceeding under the trustee process of Massachusetts, which is very similar to our garnishment acts. Indeed, we consider this point free from difficulty. We are clear that Glanton, the assignee, took subject to the incumbrance over this debt. That he bought the title of his vendor with all its defects. That he is not protected by the law merchant. That he claims *under* Whatley. That being privy *in estate*, he is *in law, Whatley himself*.

There were several other exceptions to the charge of the Court, but as they involved no matters of general interest, we have deemed it unnecessary to advert to them, further than to say, that we see no cause of complaint against the instructions to the jury. On the contrary, we belieive that the case was fairly and correctly submitted.

The judgment is therefore affirmed.