## CLARK *against* BEACH :

### IN ERROR.

An action of trespass *quare clausum fregit,* demanding not more than seven dollars damages, returnable to a justice of the peace, and thence removed, on a plea of title, to the county court, is appealable from the latter court to the superior court.

But the right of appeal, in such case, does not deprive the party of his remedy by writ of error.

Where the defendant, in support of a plea of title, offered in evidence certain declarations of a former grantor of the land in question, as to its boundaries, which, in opposition to the plaintiff's objection, were admitted; the plaintiff filed a bill of exceptions, and thereupon brought a writ of error; but the bill of exceptions did not shew when the declarations were made, or that they were relevant to the point in issue; it was held, that they were inadmissible.

Where the defendant, in an action of trespass *quare clausum fregit,* justified under the licence and authority of *A.,* who was alleged to be "the true and lawful owner of the land, and was lawfully seised and possessed thereof;" and in support of such plea, the defendant offered in evidence a mortgage deed from *B.* to *A.,* the law-day having expired, and the mortgagee being in possession; it was held, that such evidence was admissible.

This was an action of trespass *quare clausum fregit,* brought originally by *Simeon Beach* against *Elisha Clark,* before *William Kellogg,* Esq. a justice of the peace, alleging, that the plaintiff, on the 1st of *May,* 1823, was well seised and possessed of a certain tract of land, upon which the defendant entered, trode down and destroyed the grass, &c. demanding seven dollars damages. The defendant pleaded as follows: " That at the time of doing

the acts and committing the supposed trespasses in the plaintiff's declaration mentioned, one *Abby Betsey Mills* was the true and legal owner of the land on which &c. and was then and there lawfully seised and possessed of the same; and the defendant, as the servant of the said *Abby Betsey Mills,* and by her direction and command, entered upon said land, and did the acts complained of, as well he might." The cause was thereupon removed to the county court, on the recognizance of the defendant to prosecute his plea before that court. Issue being joined to the court on this plea, the cause was tried on such issue, at the *December* term, 1824.

On the trial, the defendant, for the purpose of establishing a title in *Abby Betsey Mills* offered in evidence a mortgage deed, dated the 5th of *February,* 1821, from *Lydia Mills* to her, of the land on which the alleged trespasses were committed. It appeared, that the mortgage had been forfeited, and the possession of the land surrendered, by the mortgagor to the mortgagee, before the acts complained of were done; and that, at that time, the mortgagee was in possession. The equity of redemption, however, remained in the mortgagor, not having been foreclosed. To the admission of this deed, for the purpose for which it was offered, the defendant objected; but the court admitted it.

To establish the title of *Lydia Mills,* the defendant then offered in evidence an absolute deed of the land to her from her father, *Benjamin Beach,* dated the 5th of *February,* 1821; he being, at that time, the undisputed owner, and in possession. One of the bounds mentioned in the deed, was "a heap of stones on or near *Goshen* line, which is the *South* corner of *Simeon Beach's* land." The plaintiff claimed, that this was a heap of stones near a certain hemlock tree in *Goshen* line, about 16 rods *South* of the point claimed by the defendant; and offered a witness to testify, that *Benjamin Beach,* since deceased, declared, in his life-time, that "the heap of stones near said hemlock tree, was the true boundary." The defendant then offered witnesses to testify, that said *Benjamin Beach,* in his life-time, declared, that "a certain stake, shewn to the witnesses, standing in the ground at or near the *North-West* corner of the plaintiff's land, was the *North-East* corner of the land conveyed to *Lydia Mills,* and that the *North-West* corner of said land was a number of links *North* of a certain brook; which stake was some rods *North* of the *North* line of said land, as claimed by

the plaintiff." To the admission of the testimony thus offered by the defendant, the plaintiff objected; but the court admitted it.

The issue being found and judgment rendered for the defendant, the plaintiff filed a bill of exceptions; and thereupon brought a writ of error in the superior court.

The defendant pleaded in abatement of the writ of error, that the original action was appealable by the plaintiff from the judgment of the county court to the superior court then next to be holden in *Litchfield* county; and that if the plaintiff had so appealed said action, he might have tried it before the latter court. On a demurrer to this plea, it was adjudged insufficient. The defendant then pleaded *in nullo est erratum ;* and the superior court reversed the judgment of the county court. The present writ of error was thereupon brought.

*Bacon* and *P. Miner*, for the plaintiff in error, contended, 1. That the plea in abatement of the writ of error, was sufficient; inasmuch as the cause was appealable; and it is a general rule, that where an appeal is given by statute from the judgment of any court, the remedy of the party aggrieved by the judgment, is exclusively by appeal, on which the whole merits of the cause may be examined, and errors in law, as well as mistakes of fact, may be corrected. First, the cause was appealable from the county court. The statute gives an appeal " in any action brought to, and tried by the county court, wherein the title of land is drawn in question and determined." *Stat.* 51. *tit.* 2. *s.* 62. In this case, it will not be denied that the title of land was in question, and that it was tried and determined by the county court. Is it not equally clear, that the cause was *brought* to the county court ? It was literally brought there. Was it not brought there, also, within the meaning of the statute ? The writ was made returnable to a justice of the peace; but the cause was not tried by him, and could not be, after the plea of title was given. It was removed to the county court, without any judgment rendered. It was, in that court, an original action. Secondly, if the action was appealable to the superior court, there is no need of a writ of error; as the party may have every advantage on an appeal, which he could have, on a writ of error. The remedy by appeal, where it can be had, is more direct, is less expensive, and admits of further relief. Besides, on an appeal, the very ground of error may be

removed, by amendment, or by presenting a different state of facts. It is, therefore, a reasonable implication from the statute, that in giving an appeal, it has taken away the remedy by error. This has been decided repeatedly in *Massachusetts. Savage* v. *Gulliver*, 4 *Mass. Rep.* 171. *Putnam* v. *Churchill*, 4 *Mass. Rep.* 516. *Jarvis* v. *Blanchard*, 6 *Mass. Rep.* 4. *Champion* v. *Brooks*, **9** *Mass. Rep.* 228. The general rule is recognized, also, in *Valier* & al. v. *Hart* & al. 11 *Mass. Rep.* 300. and in *Smith* v. *Rice*, 11 *Mass. Rep.* 507. 512. The reasons on which these decisions are founded, are equally applicable in this state.

2. That the declarations of *Benjamin Beach*, regarding the bounds of the land, were admissible. First, he was the person under whom the plaintiff, as well as the defendant, claimed title by deed ; and what a grantor has said against his interest, is good evidence against those who claim under him. *Jackson* d. *Griswold* & al. v. *Bard*, 4 *Johns. Rep.* 230. *Jackson* d. *McDonald* v. *McCall*, 10 *Johns. Rep.* 377. *Beers* & al. v. *Hawley* & al. 2 *Conn. Rep.* 467. 470. *Walker* v. *Broadstock*, 1 *Esp. Rep.* 453. *Davies* v. *Pierce* & al. 2 *Term Rep.* 53. Secondly, these declarations were admissible, on the ground that what a deceased person, though not the grantor of the adverse party, has said against his interest, is good evidence. *Roe* d. *Brune* v. *Rawlings*, 7 *East* 279. 290, 1. *Barry* v. *Bebbington*, 4 *Term Rep.* 514. *Stead* & al. v. *Heaton* & al. 4 *Term Rep.* 669. *Higham* & ux. v. *Ridgway*, 10 *East* 109. *Doe* v. *Robson* & al. 15 *East* 33. *Doe* d. *Baggalley* v. *Jones*, 1 *Campb.* 367. Thirdly, if these declarations are to be regarded as mere hearsay, yet as they related to ancient boundaries of land, they are admissible. *Swift's Evid.* 121. Fourthly, *Benjamin Beach*, being in possession of the adjoining land, and occupying up to a certain place, his declarations accompanying his acts, are admissible as part of the *res gesta*— shewing what and where the occupation was. *Williams* v. *Ensign*, 4 *Conn. Rep.* 456. *Davies* v. *Pierce* & al. 2 *Term Rep.* 53. *Holloway* v. *Rakes*, cited 2 *Term Rep.* 55. *Doe* d. *Foster* v. *Williams*, *Cowp.* 621.

If this evidence *might* have been received, consistently with the rules of law, and there were any special circumstances in the case, which rendered it improper, it was incumbent on the plaintiff, when he took the exception, to shew them. Had he done so, they would have appeared upon the bill of exceptions; and he might have insisted on them here. As they do not appear, this Court will say they do not exist.

3. That the mortgage deed from *Lydia Mills* to *Abby Betsey Mills*, was proper evidence in support of the defendant's plea. It proved a title in *A. B. Mills* paramount to the plantiff's title; he being a mere tort-feasor. The mortgagee, on the execution of the mortgage deed, is vested with the fee of the land, and is entitled to immediate possession. *Rockwell* & al. v. *Bradley*, 2 *Conn. Rep.* 1. 4. *Roath* & al. v. *Smith* & al. 5 *Conn. Rep.* 133. 137. *Phelps* v. *Sage*, 2 *Day* 151. Recognized in *Groton* v. *Boxborough*, 6 *Mass. Rep.* 50. 52, 3. When it is said in the books, that the mortgagor remains the real owner of the land,— a proposition, which, in its proper sense, is perfectly correct,— it is not intended to deny the legal title of the mortgagee; this being expressly saved, in some instances, and by implication, in all. *Willington* v. *Gale*, 7 *Mass. Rep.* 138, 9. *Groton* v. *Boxborough*, before cited. *Wakeman* & al. v. *Banks*, 2 *Conn. Rep.* 445. 446, 7.

But whether the mortgagee is *seised in fee*, or not, is, in this case, an immaterial enquiry. He has, incontrovertibly, a right of possession : if so, he has a right to defend it : and if so, he has a right to plead his title, whatever it may be ; and if it is better than that of the plaintiff, he must prevail. A right of possession, with the actual possession, is clearly a title paramount to no title at all. *Stat.* 53. *tit.* 2. *s.* 65. This is sufficient for the defendant's purpose. This supports enough of the plea to constitute a good defence ; and what relates to a *seisin in fee*, may be treated as surplusage. *Hitchcock* v. *Hotchkiss*, 1 *Conn. Rep.* 470.

*J. W. Huntington* and *D. C. Sanford*, for the defendant in error, contended, 1. That the plea in abatement, filed to the writ of error in the superior court, was insufficient. First, the cause was not appealable; as the action was originally returnable, not to the county court, but to a justice of the peace. A cause is made appealable from the county court, only where it is *brought to* and *tried by* that court. Secondly, if the cause was appealable, still error lies. A court of error is created to correct all the erroneous proceedings of inferior tribunals appearing on their records. It is, therefore, inconsistent with the nature and constitution of such a court, to suppose, that its jurisdiction ceases, whenever another mode of relief may be had. A writ of error is a writ of right—*ex debito justiciæ :* of course, it cannot be refused, because there may be another remedy.

The only discretion in its allowance, exists in determining whether there is a reasonable ground of error apparent on the record. This being determined in the affirmative, the allowance of the writ becomes a matter of right. *Stat.* 54. *tit.* 2. *s.* 69. In a great proportion of the cases in which writs of error are brought, another remedy might be had.

2. That the declarations of *Benjamin Beach,* on the trial in the county court, were inadmissible. First, it does not appear from the bill of exceptions, *when* the declarations were made; whether while he was the owner and in the possession of the land, or after he had conveyed the property and surrendered the possession. And here it is to be remarked, that in the case of a bill of exceptions, nothing is to be *presumed.* In this respect, it is like a special verdict. It is also well settled, that if the testimony offered, is, on general principles, admissible, but is claimed to be inadmissible, by reason of the existence of particular facts, and it is admitted, the bill of exceptions must state those facts; otherwise, there is no error. On the other hand, if on general principles the testimony offered is inadmissible, but is claimed to be admissible, by way of exception, and it is admitted, the bill of exceptions must set forth the facts, which constitute the exception; otherwise, there is error. The evidence admitted in this case, is *hearsay,* and, on general principles, inadmissible; and no facts are stated in the bill of exceptions to bring the case within any exception to this general rule. It does not shew, that the declarations of *Benjamin Beach* were made when he had any interest to be affected by them. For aught that appears to the contrary, they may have been made before he owned the land, or *post litem motam.* Secondly, it does not appear, that these declarations were relevant to any point in issue. The court do not know, and cannot ascertain from the record, where the *locus in quo* was. But if they could, these declarations would throw no light on the question of title. There is not enough shewn to make out any connexion between them and any boundary line in controversy. Now, it is a settled rule, that if evidence was admitted on the trial, the relevancy of which does not appear from the bill of exceptions, the judgment will be deemed erroneous; because the court of revision cannot know what influence it had on the verdict.

3. That the mortgage deed offered in evidence to support the defendant's plea, ought to have been rejected; it being irrelevant, not conducing to prove the averments in the plea.

Litchfield,
June,
1826.

Clark
v.
Beach.

The plea avers, that *A. B. Mills* " was the true and lawful owner, and lawfully seised and possessed." Did this mortgage deed constitute her such ? The *mortgagor* is the owner of the property in fee-simple. *He* is " the true and lawful owner, and lawfully seised and possessed." The interest of the mortgagee is a mere *chose in action.* The execution of the deed vests *no fee*, nor *any title*, in him ; but confers a right to the *possession* merely ; and operates as a licence to the mortgagee to enter. *The King* v. *St. Michael's, Doug.* 632. *Huntington* v. *Smith*, 4 *Conn. Rep.* 235. *Leonard* v. *Bosworth*, 4 *Conn. Rep.* 421. *Roath* v. *Smith*, 5 *Conn. Rep.* 133. 139. *Wakeman* v. *Banks*, 2 *Conn. Rep* 445. 446. *Fish* v. *Fish*, 1 *Conn. Rep.* 559. 560. 563. *Barkhamsted* v. *Farmington*, 2 *Conn. Rep.* 600. *Reeve's Dom. Rel.* 53. *Runyan* v. *Mersereau*, 11 *Johns. Rep.* 534. *Bradford* v. *Bradford*, 5 *Conn. Rep.* 132. The terms used in the plea, imply, that the individual has an absolute estate in fee simple in the property. Is the man, who has the mere right to obtain, to use and occupy, a farm, without the power of alienating or encumbering it, " the true and lawful owner ?" Is such a man "lawfully seised and possessed ?"

If these observations are well founded, they furnish a satisfactory answer to an enquiry made with some degree of confidence.—If a mortgagee, by the deed, has a right to *acquire* the possession, may he not use it to *retain* that possession, and especially, against a wrong-doer ? Admitting this might be done, in a proper case, where the declaration or plea was framed for that purpose, there is, in the present case, no room for the exercise of that right. First, because in this plea, the allegation is of an *ownership in fee* ; whereas the deed offered in evidence shews no such title. It neither proves, nor conduces to prove, that the defendant was the true and lawful owner ; or that, in legal contemplation, he was legally seised and possessed. Secondly, the argument alluded to is founded on an inadmissible supposition, *viz.* that our statute allowing a plea of title, and thus taking away the jurisdiction of a justice, contemplates the trial of a mere question of *possession*, as well as that of a *right of property* ; whereas it is apparent, that the statute has no such object in view ; for it speaks of a justification, by a plea of *title to the land*, and of the payment of treble damages, if he fail to make out a *title* paramount to the *title* of the plaintiff, leaving the question as to the mere right of possession, as distinct from a right of property, to be tried and finally determined, like all other causes where not more than seven dollars dam-

ages are demanded, by a single minister of justice. Besides, if under such a plea as the present, a mere right to the possession could be tried, a judgment against the plaintiff would be an *estoppel* in any future suit between the same parties or privies, even though the mortgage debt were paid ; for, as the plea alleges a title in fee, on which precise point issue is joined, a verdict for the defendant would find the title to be in him, and would be forever conclusive. *Outram* v. *Morewood,* 3 *East* 346. *Smith* v. *Sherwood,* 4 *Conn. Rep.* 284, 5. per *Bristol,* J. *Swift's Evid.* 22.

DAGGETT, J. Several objections are made against the judgment of the superior court.

1. It is said, that as the cause *might have been* appealed from the county court, to the superior court, no writ of error will lie. It is true, an appeal might have been taken from the judgment of the county court. The statute entitled "an act for the regulation of civil actions," *sect.* 62. allows an appeal from the judgment of the county court to the superior court, "in any action *brought* to, and tried by the county court, wherein the title of land is drawn in question, and determined," &c. This action was "*brought to*" the county court from a justice of the peace, under the 65th sect. of the act, in conformity with the prescription of the act, the defendant having justified under a plea of title. The words comprehend the case ; analogy justifies the practice ; and, it is believed, such has been the uniform construction of the statute. It is, however, urged, that no writ of error will lie. The 69th sect. of the act declares, "that writs of error may be brought to the superior court, from the judgments of the county and city courts, and of justices of the peace, for any error in the same, to be proceeded with according to the course of the common law," &c. This writ of error is brought *to the superior court from a judgment of the county court.* It is embraced by the words of the act ; and I have no doubt that it will lie.

2. Another question is, were the declarations of *Benjamin Beach* in relation to the bounds, admissible ? The bill of exceptions does not allege *when* the declarations were made, nor show their relevancy to the point in issue. This court cannot *see*, if it could *conjecture*, that they could bear on the issue ; and this is necessary to justify their admission. If they were made before *B. Beach* was the owner of the land, they ought

not to have been received. Equally uncertain is it, from in-
specting the bill of exceptions, whether the bounds being at one
place or the other, could affect the question, whether a trespass
had been done. In *Vernon* v. *East-Hartford*, 3 *Conn. Rep.* 482.
the principle is recognized, that the motion or bill of exceptions
must show that the testimony objected to was relevant, other-
wise the court of revision will not sanction its admission.

3. The only point on which I think the decision of the supe-
rior court incorrect, is, in deciding, in opposition to the opinion
of the county court, that the mortgage deed from *Lydia Mills*
to *Abby Betsey Mills*, was not proper evidence in support of the
plea of title pleaded by the defendant. In this plea of title, it
was alleged, that "*Abby Betsey Mills* was the *true* and *legal*
owner of the land on which, &c., and was then and there lawful-
ly *seised* and *possessed* of the same." As the defendant *Clark*
justified under the licence and authority of *Abby Betsey Mills*,
the deed was good evidence, as was supposed, in his defence.

*Simeon Beach* contends, that the deed being a mortgage,
though the law-day had expired, and though the mortgagee had
gone into possession, by an agreement with the mortgagor, as
the bill of exceptions finds; yet it did not prove, that *Abby B.
Mills* was the *true* and *legal* owner, and was *seised* and *possess-
ed* of the land, &c. In support of this position, *The King* v.
*St. Michaels, Doug.* 632. is cited. There, Lord *Mansfield* said.
on a question whether a mortgagor gained a settlement, "It is
an affront to common sense, to say the mortgagor is not the real
owner." Numerous decisions of the supreme court of *New-
York* and *Massachusetts*, are in accordance with this doctrine.
In *Connecticut*, the same general principle has been repeatedly
recognized. In *Barkhamsted* v. *Farmington*, 2 *Conn. Rep.* 600.
it was decided, that the mortgagor was to be regarded as the
owner of the land to every purpose, except the right of posses-
sion; and in *Fish* v. *Fish*, 1 *Conn. Rep.* 559. a widow of a de-
ceased mortgagor was adjudged to be entitled to dower in an
equity of redemption. In *Huntington* v. *Smith*, 4 *Conn. Rep.*
235., it was holden, that the interest of the mortgagee in mort-
gaged premises could not be taken in execution, after the ex-
piration of the law-day; and in *Leonard* v. *Bosworth*, 4 *Conn.
Rep.* 426. a mortgage was decided to be not an *alienation* with-
in the statute against selling pretended titles.

I am not disposed to question or impair the authority of these
cases; nor does the point in examination require it. But we

will look at some other decisions bearing directly on the point in discussion. In *Keech* v. *Hall, Doug.* 21. Lord *Mansfield* decided, that a mortgagee might recover in ejectment without notice to quit. In *Jackson* v. *Dubois,* 4 *Johns. Rep.* 216. it was holden, that the mortgagee might maintain ejectment against the mortgagor and those that claim under him. In *Rockwell &* al. v. *Bradley,* 2 *Conn. Rep.* 1. the doctrine in *Keech* v. *Hall,* was directly sanctioned, as also in *Wakeman* v. *Banks,* 2 *Conn. Rep.* 445. In *Newall &* al. v. *Wright,* 3 *Mass. Rep.* 138. 152. Chief Justice *Parsons* laid down the law as follows : " It is very clear, that when a man seised of lands in fee, shall mortgage them in fee, if there be no agreement that the mortgagor shall retain the possession, the mortgagee may enter immediately, put the mortgagor out of possession, and receive the profits ; and if the mortgagor refuses to quit the possession, the mortgagee may consider him as a trespasser, and may maintain an action of trespass against him, or he may, in a writ of entry, recover against him as a disseisor." I am satisfied, that this opinion is consistent with the contract of the parties to the mortgage, and that there is no established doctrine opposed to it. The mortgagee is well seised against the mortgagor, and certainly against all strangers, so as to enable him to maintain trespass or ejectment. This right of the mortgagee appears essential to the protection of the pledge ; and without it, he would be without security—his pledge would be useless.

But without the aid of these principles, so reasonable and just, the deed in question, was undoubtedly admissible. The issue was joined on the plea of the defendant, founded upon the 65th sect. of the statute above quoted. The last clause of that sect. is as follows : " and if on trial, before such court, (that is, the county court to which it has been removed, by previous provision,) he shall fail to make out a title *paramount to the title of the plaintiff*, he shall pay treble damages and cost." The defendant, then, under this statute, is bound to make out a title *paramount* to that of the plaintiff. With this object in view, he offers a mortgage deed to the person by whom he was authorized to enter, and who had gained a possession by the agreement of the mortgagor. As yet, no title, of any description, is shewn to exist in *Simeon Beach*, the plaintiff. It does not appear, whether he claims under any title, or whether he is a mere stranger. Why, then, may not *Clark* show a title by mortgage in *A. B. Mills*, under whom he has entered, and by

*Litchfield,*
June,
1826.

*Clark*
*v.*
Beach.

whom he has been put in possession, to justify, in this action of trespass? Whether this title will appear to be *paramount* to that of the plaintiff, cannot as yet be ascertained. If the mortgagee has *any interest* in the pledge, it is superior to that of a mere stranger, upon the view of the case as presented when the deed was offered. It should, therefore, have been admitted; and the county court was correct in receiving it in evidence.

It is again said, that upon the authorities above cited, the deed did not prove the averment of *seisin*, in the technical sense of the term. Be it so, for the sake of argument, but for no other purpose; what then? It proved some degree or kind of title, if the mortgagee gets any title by the mortgage, and that he does, is not denied. This Court decided, in the case of *Hitchcock* v. *Hotchkiss,* 1 *Conn. Rep.* 470. that "where land, in which the debtor had an *estate for life* only, is levied upon, appraised and set off as an estate in *fee simple,* the creditor acquires a title to the estate, which the debtor had." In an action of ejectment, the plaintiff may recover, if he proves a right to the possession, though he alleges his quantity of interest to be greater than it is proved to be. A declaration in ejectment counting on a *seisin in fee,* would be sustained, by proof of an *estate for life.*

In every view of this case, I am satisfied, that the opinion expressed at the circuit, that the deed from *Lydia Mills* to *A. B. Mills* was not admissible, was incorrect; but as the judgment of the county court was erroneous in the admission of the declarations of *Benjamin Beach,* the superior court was correct in reversing it; and, of course, the judgment of the superior court must be affirmed.

PETERS, BRAINARD and LANMAN, Js. were of the same opinion.

HOSMER, Ch. J. For the reasons assigned, in this case, by the judge appointed to deliver them, I concur in affirming the judgment of the superior court; but relative to the admission of the mortgage deed in evidence, to sustain the defendant's plea of title, I have the misfortune to differ from my learned brethren. I am of opinion, that it should have been rejected.

The defendant avers, in his plea, that "one *Abby Betsey Mills* was the true and legal owner of the land on which, &c. and was, then and there, lawfully seised and possessed of the

same." The plaintiff's action demanded seven dollars in damages; and, therefore, was unappealable. Still the justice, as undoubtedly he ought, transmitted the record to the county court for trial. Such, on plea of title given, are the imperative requisitions of the statute. *Stat.* 52. *tit.* 2. *s.* 65.

The allegations of the plea were traversed; and to sustain them, the defendant offered in evidence a mortgage deed, executed to the said *Abby*, by one *Lydia Mills*, accompanied by proof of possession in the mortgagee, and with an admission, *that the equity of redemption in the mortgaged premises, had not been foreclosed.*

I am of opinion, that in relation to the plaintiff, a stranger to the mortgage, the title to the mortgaged premises was vested in *Lydia Mills*, the mortgagor; and that the offered testimony conduced to prove no essential part of the defendant's plea. Although the plea terminates in the single point of title, it composes two distinct averments. The first is, that *Abby B. Mills* is the owner of the land in question, and *seised* of the same; and the second, that she is in possession. This plea of title under the statute must be sustained by proof throughout, or at least, of such part of it, as in law constitutes a valid defence.

It was contended at the bar, in the argument of this case, that the deed of *A. B. Mills* conjoined with the possession taken by the assent of the mortgagor, sufficiently supported the defendant's plea. It was not, nor could it be argued, with any plausibility, that the plea was sustainable by the proof of mere naked possession. But it was insisted, that a lawful possession, independent of the seisin averred, supported enough of it; and that the unproved averments beyond this, might be considered as redundant. The high respect I entertain for the learned counsel, who pressed this point upon the court, alone induces me to regard it; and if my argument should be deemed unnecessary, I hope this will be admitted, at least, as a sufficient apology.

It is an unquestionable principle, that, in an action of trespass, the plaintiff is not obliged to set forth his title, but may declare generally on his possession. 1 *Chitt. Plead.* 175. *Archb. Plead.* 216. The reason is, because the action is founded on possession only, and not on title. *Lambert* v. *Stroother, Willes* 218. 221. *Catteris* v. *Cowper,* 4 *Taun.* 547. An injury to the plaintiff's possession is the gist of his action; and all beyond this is redundant, and unnecessary to be proved. Although he

Clark
v.
Beach.

aver a seisin in fee, this indisputable surplusage he is not bound to establish ; but proof of lawful possession in fact, or of any less estate than the one averred, is sufficient to sustain the declaration. *Hitchcock* v. *Hotchkiss,* 4 *Conn. Rep.* 470.

But the law relative to a special plea in bar, is widely different. It is not possession, however lawful, that will authorize or support such a plea, but title only. Hence, as is said in *Archbold's Pleading,* (*p.* 216.) although in trespass *quare clausum fregit,* it is not necessary for the plaintiff to set forth his title, but he may declare generally on his possession, yet, " *in pleas, the rule is otherwise ;*" for, " if the matter of defence arise from title in the defendant, the title must be set forth fully in the plea, in order that the plaintiff may have an opportunity of traversing it." *Grimstead* v. *Marlowe,* 7 *Term Rep.* 717. 718. *Lodge* v. *Frye,* Cro. Jac. 52. *Faldo* v. *Ridge,* Yelv. 74. *Pearle* v. *Bridges,* 2 *Wms. Saund.* 402. n. 1. 1 *Ro. Rep.* 13.

To the argument that *lawful possession* sustains a sufficiency of the defendant's plea of title, I will reply specifically and distinctly.

1. The lawful possession of the defendant in an action of trespass, is never pleadable in bar, but can be given in evidence only under the general issue. The reasons are, that the plaintiff avers, and is indispensibly bound to support his possession, the very *gist* of his action ; and the defendant cannot plead any matter in bar, *unless he admit the plaintiff's possession.* 1 *Chitt. Plead.* 511. *Archbold's Plead.* 215. 217.

The law has made adequate provision for his defence, by allowing him to give in evidence, under the general issue, every fact that invalidates the plaintiff's title. 1 *Chitt. Plead.* 494. *Lambert* v. *Stroother, Willes* 218. 222. *Dodd* v. *Kyffin,* 7 *Term Rep.* 354. *Argent* v. *Durrant,* 8 *Term Rep.* 403. Any matter of defence, which denies what the plaintiff would, on the general issue, be bound to prove in the first instance, in support of his action, may and *ought* to be given in evidence under that plea, although any ground of defence, *which admits the facts alleged in the declaration,* but *avoids* the action by matter, which the plaintiff would not be bound to prove or dispute in the first instance, on the general issue, may be pleaded specially. 1 *Chitt. Plead.* 497. *Gibbons* v. *Pepper,* 4 *Mod.* 405. *Hussey* v. *Jacob,* 1 *Ld. Raym.* 88, 9. 3 *Bla. Comm.* 309. Hence, it unquestionably results, that, in an action of trespass, the defendant may not plead specially, that he was in the actual and lawful possession of the

*locus in quo,* &c. ; for to sustain his action, the plaintiff is obliged to prove, that *he* was lawfully possessed. 6 *Bac. Abr.* 566, 7. (*Gwil.* ed.) *tit.* Trespass. C. 3. 2 *Hawk. P. C.* 29. c. 64. s. 1, 2, 3. *Dalt. Sher.* c. 129. *Berry* and *Goodman's* case, 2 *Leon.* 147. 2 *Plowd. Com.* 546. n. 4 *Leon.* 184.

In bar of the plaintiff's action, the defendant may plead title, or *liberum tenementum,* to wit, that the *locus in quo* is his close, soil, and freehold ; or that thereof he is seised in his demesne as of fee. 9 *Went. Plead.* 102. 124. 182. 2 *Chitt. Plead.* 560. But wherever title is pleaded, *there is an end to the question about possession,* and the issue is *on the mere title. The plea necessarily admits the fact of the plaintiff's possession,* as well as the entry of the defendant on the premises, and justifies the doing that, of which the plaintiff complains. *Archbold's Plead.* 217. 1 *Chitt. Plead.* 511. If the plea do not admit the facts averred by the plaintiff, and made the subject of his complaint, except that he has the freehold title, it is not a justification, but a denial of the facts, and is exceptionable as amounting to the general issue. *Taylor* v. *Cole,* 3 *Term R. p.* 292. 298. *Holler* v. *Bush,* 1 *Salk.* 394. *Hallett* v. *Burt, Carth.* 380. 1 *Chitt. Plead.* 511. 1 *Wms. Saund.* 28. n. 1. 14. n. 3. "The construction of the statute," (concerning the plea of title in trespass,) say the court, in *Strong* v. *Smith,* 2 *Caines' Rep.* 28. "no doubt, is, that when a defendant sued for a trespass before a justice, relies on his title, *he admits the trespass.*"

2. If the plea of the defendant is construed connectedly, *and such is the unquestionable rule of construction,* it avers the possession of a *freehold estate* in *A. B. Mills,* which is equivalent to an averment, *that she is seised of the freehold.* Whatever, then, satisfies the allegation of seisin of the freehold, equally falsifies the averment of possession of the freehold ; for if *A. B. Mills* was not the owner and *seised* of the *locus in quo,* she was not *possessed,* pursuant to the defendant's averment, of a freehold estate. Strike out the allegation of freehold, and nothing remains, but an averment of naked possession ; retain it, and the plea never can be established, by proof of any possession, that falls short of evincing a seisin of the freehold. Were it not for the reference of the possession to the freehold, the plea thus far, would be without any character, and void for manifest uncertainty ; as until the trial it could not be known, whether the reliance of the defendant was on the possession of an estate in fee simple, for life, for years, at will, or by licence ; and the

*Litchfield,*
June,
1826.

Clark
*v.*
Beach.

plaintiff would not have the requisite information to prepare for the hearing, and avoid surprise. By infallible consequence, the averment that the said *A. B. Mills* was seised of the freehold, must be sustained, or the entire plea will be unsupported.

3. As the defendant has averred seisin and possession of a freehold in *A. B. Mills,* he must prove it, *if possession of a less estate legally pleaded,* would have been sufficient. It is an established rule, that, where a party takes on himself to state in any pleading a substantial averment, or alleges a precise estate, *which he is not bound to do;* yet, if they are material and bear on the question, he gives the other party the advantage of traversing them, and inevitably fails, unless he sustain his averment. 2 *Wms. Saund.* 207. *a.* n. 24. 1 *Wms. Saund.* 346. n. 2. 1 *Chitt. Plead.* 231. *Yelv.* 195. Thus, in *Leake's* case, *Dyer* 365. it became necessary that the plaintiff should show, that he had a right to put his cattle into a close, against which he was bound to repair the fence; but a seisin in fee was not necessary to give that right. A term for life, or years, or even an estate at will, would have conferred it. But the plaintiff having alleged a seisin in fee, he was held to the proof of it. 1 *Chitt. Plead.* 525. 2 *Wms. Saund.* 207. *a.* n. 22. This is precisely, in substance, the present case.

Lastly, it is the *freehold title* pleaded, that authorizes the removal of an action of trespass from a justice, to the county court, and which gives jurisdiction to such higher court. Nothing short of this authorizes such removal. If this principle is admitted, it is indispensable that a freehold title be proved.

The statute (*p.* 52. *tit.* 2. *s.* 65.) enjoins the removal of unappealable actions of trespass, only when brought before a justice, and the "defendant shall *justify* by plea of title." The expression "*plea of title,*" by familiar use and frequent application in practice, has the precision of a technical term. It is synonymous with the phrase a plea of *liberum tenementum,* or seisin in fee; and such is its established signification. *Riggs* v. *Woodruff,* 2 *Root* 35. *Abel* v. *Abel,* 1 *Root* 549. Whoever heard, that a plea of lawful possession by the defendant, was considered to be a plea of title?

The only conceivable reason for giving to unappealable causes in trespass, when title is pleaded, the privilege of removal from a justice to a higher court, that there may be a solemn trial by jury, (a privilege not allowed in other actions, and inadmissible, if the direct consequences of the action were alone in-

volved,) is the importance the litigated question assumes, on this plea being given. The determination upon it operates often, on other lands depending on the same question, and collaterally, by way of estoppel, on parties and privies, in a future suit, depending on the facts found, or title in issue. *Outram* v. *Morewood*, 3 *East* 346. But a plea of lawful possession in the defendant, if pleadable, could never be supposed to require the suspension of justice, and a solemn trial in a superior court; since from the evanescent nature of possession, it would be of little use as an estoppel, if the inadmissible supposition of an estoppel in such case were granted. No sufficient reason can be assigned, for the removal of such cause to a higher tribunal, while other actions of the same actual and relative consequence, are definitively adjudged by a justice of the peace.

An unmerited stress was put in the argument, on the expression of *title paramount* used in the statute; as if it warranted the construction, that any title superior to that relied on, by the plaintiff, authorized the contemplated defence; or in other words, that by plea of title, was only intended, any claim of right, higher than the one exhibited by the plaintiff. The absurd consequences resulting from such construction, would effectually repel it. On the above exposition of the law, if the plaintiff should rely alone on possession, the defendant's right of possession would be a superior title; and the legislature, on the construction advanced, will have dignified such right, perhaps for a day only, by the imposing denomination of a plea of title; and have authorized the removal of the cause to a superior tribunal, for the solemn determination by jury, of this unimportant question.

It is said, by Sir *Edward Coke*, (1 *Inst.* 381. *b*.) "that it is the most natural and genuine exposition of a statute, to construe one part of the statute by another part of the same statute; for that best expresseth the meaning of the makers ; and this exposition is *ex visceribus actus*. The act of the legislature, requiring the removal of actions of trespass from a justice of the peace to the county court, (*Stat. p.* 52. *tit.* 2. *sect.* 65.) prescribes, that it shall take place, when "the defendant shall justify by plea of title to the land." I have endeavoured to show, that by this expression, construed by itself, as well as with re ference to *the object* of the law, title to the freehold was intended. At the close of the section just read, it is said, "if on trial, before such court, he (the defendant) shall fail to make out *a ti-*

*Litchfield,*
June,
1826.

Clark
*v.*
Beach.

*tle paramount* to the title of the plaintiff, he shall pay treble damages and costs." The former part of the section prescribes, that *a plea of title to the freehold*, shall authorise a removal of the cause; the latter clause, aimed at the proof requisite, declares, that on the trial, the defendant's title must be superior to that, on which the plaintiff depends. This superfluous provision, expressing only what before was necessarily implied, and intended alone to usher in the treble damages, neither alters the previous enactment, nor varies the construction of the act. The title referred to by the last clause, was the freehold title before spoken of; and it supposes only, that where two titles of this nature conflict, that of the defendant must be superior. This nude provision was never intended to define the title in question, nor to constitute *that* a title, which obviously was not of this description.

After all, if a different opinion is entertained, it will not vary the case. The defendant has pleaded freehold title, and must stand or fall, by the truth or falsehood of this averment.

It results as an infallible consequence, that the defendant, who has pleaded *liberum tenementum* in *Abby B. Mills*, must sustain this averment by proof; even if the law would sanction a different plea. It is the pith and marrow of the plea; and the only matter that gives it support or sufficiency.

The remaining question is, whether a mortgagee in possession is *seised* of the mortgaged land. This the defendant has averred; and this he must clearly establish.

It will be borne in mind, that the plaintiff is neither mortgagor nor mortgagee, nor claiming under either; and that, as against him, a stranger to the mortgage, the defendant has assumed the burden of sustaining his title. This proposition, then, he must support; that, as against a stranger, the mortgagee in possession and before foreclosure, *is seised of the freehold.* Now, if this is a legal title, *the mortgagor is not seised;* for it would be absurd to advance the contradictory assertion, that there is a seisin both in the mortgagor and mortgagee.

In a court of chancery, that the mortgagor is viewed, as being seised of the freehold, and the mortgagee as having a lien upon the land by way of pledge only, is too clear to be made a question. 1 *W. Bla. Rep.* 145. 1 *Pow. Mort.* 246, 7. 2 *Fonb. Eq.* 284. It is a rule in equity, that a mortgagee is only *a trustee;* and, as in the civil law, a mortgage is only a security for money, *and passes* only a *chattel interest,* that nothing is conveyed to

*Litchfield,*
June,
1826.

Clark
*v.*
Beach.

the mortgagee,—neither land, nor dower, nor curtesy; and *that the equity of redemption alone is an estate in the land.* 3 *Chan. Ca.* 3. *Pr. Chan.* 99. 2 *Ves.* jun. 433. *Petat.* v. *Ellis,* 9 *Ves.* jun. 563. 1 *Madd.* 412. This doctrine, both ancient and uniform, is founded in a view of the subject, not in its form or superficies, but by penetration to the core, and regarding the contract of the parties, in its substance and intent. *It was intended as a security only, and not as a sale.*

It was said by Sir *John Mitford,* afterwards Lord *Redesdale,* that "the distinction between strict law and equity, is never, in any country, a *permanent* distinction. Law and equity are in continual progression; and the former is constantly gaining ground upon the latter. A great part of what is now strict law, was formerly considered as equity; and the equitable decisions of this age, will unavoidably be ranked under the strict law of the next." *Mitf.* 428. *Millar's Historical View of the English Government, p.* 433. No learned lawyer wants a proof or illustration of these remarks; and even our own reports furnish abundant confirmation of this unquestionable truth. 4 *Day* 6.

The equitable doctrine, concerning the rights of mortgagor and mortgagee, has gradually been naturalized in the common law code; and by the adoption of principles long established in chancery, and tenaciously adhered to, the suitors are not driven from one bar, by increased litigation and expense, to obtain infallible relief at another. Accordingly, it has become well settled in courts of common law, that the mortgagee, *until foreclosure,* has only a chattel interest. A half century since, the distinct rights of mortgagor and mortgagee were declared by Lord *Mansfield.* In *Martin* v. *Mowlin,* 2 *Burr.* 978. it was said, by this illustrious judge, that "a mortgage is *a charge* upon the land, (not the fee simple;) and that whatever would give the money will carry the estate in the land along with it, to every purpose. The estate in the land is the same thing as the money due upon it. *It will be liable to debts; it will go to executors; it will pass by a will not made and executed with the solemnities required by the statute of frauds;* the assignment of the debt, or forgiving it, will draw the land after it; *nay, it will do it,* though the debt were forgiven by parol." From these properties of the mortgagee's estate, it appears in the strongest manner, that it is not *in the land,* but in the security only. By the same judge, in *The King* v. *St. Michaels, Doug.* 602. it was said, that "a mortgagor in possession gains a settlement, because the

mortgagee, notwithstanding *the form, has but a chattel*, and the mortgage is only a security. It is an affront to common sense, (said he,) to say the mortgagor is not the real owner." To the same effect is *The King* v. *Edington*, 1 *East* 288 ; and there is nothing in the *English* law, contravening this doctrine.

By the supreme court of the state of *New-York* it has been adjudged, that the mortgagor, notwithstanding the mortgage, *is seised*, and the legal owner as to all persons, except the mortgagee and his representatives. *Hitckcock* & ux. v. *Warrington*, 6 *Johns. Rep.* 290. *Runyan* v. *Mersereau*, 11 *Johns. Rep.* 532. In the latter case, it was decided, that the mortgagor may maintain trespass against the mortgagee ; that *mortgages are not conveyances of land ; and that the freehold is in the mortgagor.* 3 *Johns. Ca.* 329. 1 *Johns. Rep.* 590. 4 *Johns. Rep.* 42. The same court has determined, *that the mortgagee has only a chattel interest ;* (15 *Johns. Rep.* 319.) *that an outstanding mortgage is not a breach of the covenant of seisin ;* (7 *Johns. Rep.* 376.) *and that the wife of the mortgagor is entitled to dower.* 7 *Johns. Rep.* 278. 15 *Johns. Rep.* 319. *Vid.* 5 *Johns. Ch. Rep.* 452. The debt is considered as the principal, and the mortgage as an incident only. 1 *Johns. Rep.* 580. 4 *Johns. Rep.* 41.

To the same effect are the determinations in the supreme court of *Massachusetts. Groton* v. *Boxborough*, 6 *Mass. Rep.* 50. *Goodwin* v. *Richardson*, 11 *Mass. Rep.* 469. *Bolton* v. *Ballard*, 13 *Mass. Rep.* 227. *Snow* v. *Stevens*, 15 *Mass. Rep.* 278. In *Kelly* & ux. v. *Beers*, 15 *Mass. Rep.* 387. it was said, by *Jackson*, J., in delivering the opinion of the court ; " a mortgagor is considered as the owner of the land, as to all the world, except the mortgagee."

In *Blaney* v. *Bearce*, 2 *Greenleaf* 132. *Mellen*, C. J. said, " as between the mortgagor and other persons (not mortgagees,) he is considered as still having the *legal estate* in him, and the power of conveying the legal estate to a *third* person, subject to the incumbrance of the mortgage."

A recurrence to other similar determinations in the other states is unnecessary, as in the state of *Connecticut*, and by this Court, the distinct rights of mortgagor and mortgagee have been often, and, I trust, definitively settled.

Sixteen years since, in *Gunn* v. *Scovill*, 4 *Day* 234. it was adjudged, that a deed by a disseised mortgagee, to the mortgagor out of possession, was not within the statute against selling pretended titles. The nature of the mortgagee's title was lu-

minously discussed, by the late Ch. J. *Reeve*, in delivering the opinion of the court. " I think," said he, " it is too late to say, that mortgages in the hands of the mortgagee, are real property. They are considered in this point of light, for the purpose of enabling the mortgagee to get into possession, when he wants the benefit of his pledge. *When contemplated in every other light*, they are personal property." (Vid. *Reeve's Dom. Rel.* 560.) In *Fish* v. *Fish*, 1 *Conn. Rep.* 560. it was determined, that the widow of a deceased mortgagor is entitled to dower in the equity of redemption, on the ground distinctly expressed, *that the mortgagor is the owner of the land.* This principle it was necessary to assume, as the law gives dower to those widows only, *whose husbands die seised* of the land in question. Conformably with the determinations just cited, the first of which declares that the mortgagee has only a chattel interest, and the last, that the mortgagor is seised of a freehold estate, the decisions have been numerous. By the statute concerning inhabitants, it was enacted, that no inhabitant of any town in this state, shall gain a legal settlement in any other town in the state, by the qualification of property, *unless he shall have been possessed in his own right in fee*, of a real estate of the value of a hundred dollars. In *Barkhamstead* v. *Farmington*, 2 *Conn. Rep.* 600. it was adjudged, that the mortgagor in possession, acquired a settlement under this law : In other words, that he was possessed in his own right in fee of real estate. What can more conclusively declare, that the mortgagor is seised in fee simple of the estate mortgaged ? In *Leonard* v. *Bosworth*, 4 *Conn. Rep.* 421. it was decided, that a mortgage is not an alienation within the statute against selling pretended titles ; and that it is merely a lien, by means of which the mortgagee may obtain possession, and if his debt is not paid, appropriate (by foreclosure) the thing pledged in satisfaction. In the case of *Huntington* v. *Smith*, 4 *Conn. Rep.* 235. the court determined, that *" the fee simple of the land is in the mortgagor;"* and that the interest of the mortgagee, after the expiration of the law day, and before foreclosure, cannot be taken in execution. So, in *Roath* v. *Smith*, 5 *Conn. Rep.* 133. it was expressly decided, that " the fee of the land mortgaged is in the mortgagor ; that the mortgage is an incident to the debt, *a mere chose in action ;"* that on the death of the mortgagee, *like all other chattels*, it vests in his personal representative ; and that a bill of foreclosure can no more be sustained by the heirs of the mortgagee,

*Litchfield,*
June,
1826.

Clark
*v.*
Beach.

than *a suit upon a bond, or any other chose in action.* This case, if I am not grossly mistaken, settles the rights of mortgagor and mortgagee, and determines the former to be tenant in fee simple, and the latter to have no other title in the land, except a lien upon it for security. In *Swift* v. *Edson, 5 Conn. Rep.* 331. it was expressly adjudged, that until complete foreclosure, a mortgage is personal property only.

After a review of the numerous and uniform determinations of this Court, spreading over a period of nearly twenty years, and harmonizing with all the decisions of the judiciaries on both sides the *Atlantic,* I put the question, (the affirmative of which the defendant is bound to sustain ;) *Is the mortgagee seised of the premises mortgaged ?* Certainly not, if the rule *stare decisis,* or a decent respect to the determinations of the most respectable courts, is permitted to influence.

It, however, was said, in the argument of the case, that the mortgagee's *possession* enlarged his title, and made him tenant of the freehold.

In my judgment, a more gratuitous assertion cannot be made. There is nothing in the nature of this fact *per se,* that adds to the mortgagee's title, or the title of any other person. Before entry, the grantee of land, except where possession is requisite to commence a right, has title, not enlarged by subsequent occupation ; as such occupation confers not any right, but merely gives the enjoyment of a right antecedent. If the supposition, which neither principle nor analogy countenances, were true, that the possession of the mortgagee gives him seisin of the freehold, he would always be seised ; for he would never fail to enter.

After possession, just as before, the estate mortgaged is a pledge only ; the relation of creditor and debtor exists ; the equity of redemption is unimpaired ; or if the law-day has not elapsed, the payment of the debt, annihilates all the rights of the mortgagee ; and every thing is in *statu quo.* All this is true, until foreclosure is effected. Then it is, that the mutual relation of the parties becomes changed. There is no longer a mortgage or pledge, a creditor or debtor, a mortgagor or mortgagee, or an equity of redemption. The mortgaged premises, by a legal appropriation thereof, are lost to the mortgagor forever ; and the mortgagee has become tenant in fee simple. This point was settled, by the unanimous opinion of this Court, in *Swift* v. *Edson,* adjudged a year since, in the county of *Fair-*

*field.* 5 *Conn. Rep.* 531. As this determination has not been questioned, at the bar or on the bench, I must consider it as conclusive evidence of the law. If so, the mortgagee's right before possession, as well as after, is identically the same, until actual foreclosure.

On what principle, then, as against the plaintiff, a stranger to the mortgage, shall the mortgagee sustain a plea of title to the freehold? *How shall he be considered as having proved a fact, which his testimony disproves?* Shall he be permitted to support a plea of title to the freehold, that works an estoppel on all parties, by the exhibition of a mortgage, which demonstrates that he has not the title?

It has been argued, that the mortgagee may maintain an ejectment without notice to quit. Undoubtedly he may; but what consequence does this infer? Although the mortgagee has a chattel interest only, yet in order to render his pledge available, and give him the intended benefit of his security, he is necessarily indulged with this, the only instrument, by which he can obtain the possession of the land mortgaged. I repeat the observation of *Reeve*, J. in *Gunn v. Scovill*, 4 *Day* 242. " I think it is too late to say, that mortgages, in the hands of the mortgagee, are real property. They are only considered in that point of light, for the purpose of enabling the mortgagee to get into possession. *When contemplated in every other point of light*, they are *personal property*."

It does not result from the preceding admission, that the mortgagee may plead title, even against the mortgagor; much less, that he may defend his possession, by this plea, against a stranger. When, until the present case, was such a plea tendered by the mortgagee?

That the mortgagee may recover possession of the premises mortgaged, by the only real action known to our law, results from the necessity of the case, and the construction of the mortgage. It was the intention of the parties, that he should have possession of the thing hypothecated, without which, the mortgage would be of no avail. Nor does the capacity of sustaining the action of disseisin here imply but the person who sustains it, is tenant of the freehold. The plaintiff may allege that he is seised of the premises; and if he has a possessory right, his action is supported. 2 *Sw. Syst.* 68, 9. *Chalker* v. *Chalker*, 1 *Conn. Rep.* 79. *Hitchcock* v. *Hotchkiss*, 1 *Conn. Rep.* 470.

In the cited case of *Chalker* v. *Chalker*, ( *p.* 92.) it was said, by the court, when speaking of the action of disseisin, that " it is a very beneficial process, and supplies the place of every form of action, real, *possessory*, or mixed, for recovering the land." From this doctrine no injury is created, by a recovery in the action alluded to; for unless the plea of title is pleaded, there is no estoppel. *Smith* v. *Sherwood, 4 Conn. Rep.* 276. *Bradford* v. *Bradford, 5 Conn. Rep.* 127.

From the preceding observations it does not result, that the mortgagee has a freehold interest, or that, when in possession, he may justify by plea of title. There is no necessity for this doctrine; no established rule authorizing it; and no analogy, from the principles regarding declarations, to those which relate to a special plea. A tenant for years may sustain ejectment; but he cannot successfully plead *liberum tenementum*. How, then, can the mortgagee? He has not a freehold estate; and although, like tenant for years, on his possessory right he may maintain disseisin; yet, having no interest superior to such tenant, he cannot plead title.

I have said nothing concerning the right of the mortgagee to sue without notice, as this doctrine has no reference to his title. *Rockwell* & al. v. *Bradley, 2 Conn. Rep.* 1. *Wakeman* & al. v. *Banks, 2 Conn. Rep.* 445. It presupposes only, that the mortgagor in possession, under an indefinite licence, is at all times liable to the suit of his mortgagee. It is the possessory right of the mortgagor, that alone is in question.

To conclude. If a thing is characterized by its properties, the mortgagor, as against strangers at least, is seised of the premises mortgaged; and until foreclosure, the mortgagee has only a chattel interest. The mortgagor's interest is transferable only by deed, duly attested by two witnesses, and acknowledged before a justice; it descends to his heirs; it is subject to execution as real estate; it is liable to dower; it gives a settlement by freehold estate; it is, in *England*, a freehold qualification for members of parliament; and, in short, by uniform decisions, it is the ownership in the land. On the other hand, the interest of the mortgagee is transferable without deed, by a delivery of the security only; it is vested in executors; it is not liable to execution; it is not subject to dower; it gives no settlement; it authorizes no vote; and, by invariable and numerous determinations, is a chattel interest, or *chose in action* only.

How, then, can the mortgagee sustain a plea of title, by his mortgage, and support the averment that he is *seised?*

Judgment affirmed.